Rebecca POWELL, Appellant,

v.

Dennis POWELL, Appellee.

No. S–12532.

Supreme Court of Alaska.

Oct. 10, 2008.

G.R. Eschbacher, Anchorage, for Appellant.

Dorothea G. Aguero, Anchorage, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, CARPENETI, and WINFREE, Justices.

*OPINION*

PER CURIAM.

## I. INTRODUCTION

Dennis and Rebecca Powell divorced in December 2004. They jointly agreed to a proposed division of their assets and this division was incorporated in the superior court's decisions. Ten months after the divorce, Rebecca filed a Civil Rule 60(b) motion for relief from the property division. After conducting an evidentiary hearing, the superior court denied Rebecca's petition. We affirm because the superior court did not abuse its discretion in so ruling.

## II. FACTS AND PROCEEDINGS

Dennis and Rebecca Powell have married and divorced twice. They originally married in 1992. The two divorced, reconciled, and resumed living together in 1993. They were re-married in 1994. In 2004 they divorced again. They had no children together, but both have children from prior marriages. At the time of the second divorce, Dennis was retired, having left his job at the Federal

Aviation Administration in 2002. Rebecca is a realtor.

Approximately ten months after the 2004 divorce, Rebecca filed a Civil Rule 60(b) motion for relief from the property division. While the parties dispute many of the relevant facts, Rebecca argued in her Rule 60(b) motion that the allocation was based on a mistake and was the result of duress and oppressive conduct.

### A. Marital Assets and the Property Division

The couple's primary assets, owned either jointly or individually, consisted of a home in Anchorage, a cabin in Sterling, a cabin in Rainbow Shores, and Dennis's retirement account. The two also, jointly or individually, had various debts, the most sizable of which were two mortgages on the Anchorage home and credit card debt.

As part of their petition for dissolution of marriage, Dennis and Rebecca jointly submitted a proposed allocation of property. The superior court accepted this allocation and incorporated it into its findings of fact and conclusions of law and its decree of divorce. Dennis and Rebecca reached this property division after negotiations via telephone and e-mail. Rebecca explains that the negotiations "mainly concerned two items consisting of who would be responsible for the $100,000.00 second mortgage on the Anchorage home and how the credit card debt would be divided."

Both parties retained attorneys and indicated on their proposed property division form that they had received legal advice. However, the two negotiated and reached the division largely, if not entirely, on their own. In an October 20, 2004 e-mail to Dennis,

Rebecca stated, "I REALLY want to work this out without attorneys—it would give each of us, immediately, most of our $3500 [retainer] back." Rebecca claims that she contacted her attorney after she and Dennis reached a tentative property division, but that she declined to send her attorney a copy of the draft agreement.[1]

Dennis owned the home in Anchorage before the marriage and retained title solely in his name during the marriage.[2] The two valued the property at $395,000. It was subject to two mortgages: a first mortgage of $160,000 and a second mortgage of $100,000. Rebecca received the house subject to the first mortgage. According to the property division form, the two split the second mortgage, but provided that it would be paid off from the sale of the house.[3]

The two jointly owned the cabin in Sterling and valued it at $400,000. The second mortgage on the Anchorage home was largely spent on the Sterling cabin. Dennis received the cabin. Rebecca alleged that it was her understanding that the cabin would always be available for their children from prior marriages and that the children would inherit the property. Rebecca's understanding was not included in the written property division.

Finally, the two jointly owned a cabin in Rainbow Shores. They valued it at $86,000 and evenly allocated its ownership upon divorce. They agreed to sell the property and equally divide the proceeds.

During the negotiations, neither party obtained an estimate of the present value of Dennis's retirement account. However, they both knew, or should have known, the size of the annual retirement salary that Dennis was receiving and that he would be receiving

---

1. As explained below, Rebecca alleges that Dennis told her not to discuss the division with her attorney. She testified that she told her attorney this reason when he asked her why she would not send him the draft agreement. Dennis denies her allegation.

2. Prior to the second marriage, the parties signed a pre-nuptial agreement whereby Rebecca waived any claims to all of Dennis's pre-marriage property, among other things. However, the pre-nuptial provided that the two would re-negotiate the agreement on their fifth wedding

anniversary. No such re-negotiation occurred. The superior court did not discuss the pre-nuptial agreement in its decision.

3. It is not clear if the two truly "split" the mortgage. By agreeing to pay off the mortgage from the sale of the Anchorage house, it appears that Rebecca essentially took over the mortgage, subject to some other payment agreements set forth by the parties later in the proposed property division.

these checks for the rest of his life.[4] Rebecca asserted that the marital portion of the account has an estimated present value of $730,000.[5] Dennis received the entire retirement account in the settlement.[6]

Rebecca and Dennis also divided their credit card debt. While Rebecca claimed that she had been paying some of his credit cards, the property allocation agreement does not include such a requirement. As Dennis explained the agreement, many of the credit cards were in his name (due, allegedly, to Rebecca's troubled credit history) but Rebecca did not take over any of the credit card debt Dennis himself accrued.

By Rebecca's calculations, Dennis received property and assets with a net value in excess of $1 million (even excluding the retirement account's estimated present value, in excess of $300,000), while Rebecca received property and assets with a net value of slightly over $100,000.

## B. Rebecca's Rule 60(b) Motion

At the conclusion of the divorce hearing on December 1, 2004, Rebecca sent Dennis an e-mail stating that she thought "everything went well." Dennis remarried in 2005, but did not tell Rebecca. In September 2005 Rebecca learned of Dennis's marriage from her children. Two of Rebecca's children visited Dennis at the cabin in Sterling in August and met his new wife. Rebecca claimed that Dennis made it clear that the children were not welcome at the cabin. Dennis denied this claim, explaining that he only refused to vacate the cabin for her children during their visit.

In October 2005, about ten months after the divorce and property judgment, Rebecca filed a Rule 60(b) motion to vacate the property division. The motion cited three grounds for relief under Rule 60(b): (1) mistake, (3) misconduct, and (6) injustice.

Rebecca's motion did not contain any discussion of the mistake claim.

Rebecca's claim of extortion or misconduct was based on events that occurred before the divorce and around the time of the property allocation negotiations. In August 2004 Rebecca went to California, ostensibly to help her son find an apartment and to attend a real estate class. After she returned to Alaska, Dennis accused her of having met someone in California. Denying it, Rebecca invited Dennis to look at her computer and read her e-mails. Dennis accepted. He purchased a computer program to allow him to access an e-mail account to which he did not have a password. On or before September 14, 2004,[7] Dennis accessed this account and found a number of e-mails, some of which were sexually explicit, between Rebecca and Bill Miles. Dennis printed these e-mails and confronted Rebecca, who again denied having an affair.

Rebecca and Dennis provided different accounts of what happened next. Both agreed that Dennis asked Rebecca what she would think if her children, friends, and co-workers knew about her affair. As the superior court explained, Dennis likely intended this to be a rhetorical statement while Rebecca interpreted it as a threat.[8] Rebecca maintained that

4. Dennis listed his "gross wages" on the property division form that the two jointly submitted to the court. Given that Dennis was retired at the time, his "gross wages" consisted of retirement payments.

5. Dennis, for the purposes of Rebecca's Rule 60(b) motion, did not submit an alternate valuation of his retirement account. However, the superior court suggested that it might allow Dennis the opportunity to present his own valuation if it granted Rebecca's motion.

6. During the marriage Dennis cashed in his Thrift Savings Plan (TSP) account. While Rebecca occasionally makes mention of the TSP money, she concedes that most of this money was

invested in the Sterling property, which Dennis received.

7. The print date of the e-mails in the record is September 14, 2004. The most recent e-mail in the record between Bill Miles and Rebecca was sent on September 13, 2004. We assume that the computer's date was correct. Based on his testimony, Dennis might have accessed these e-mails at any time after Rebecca invited him to look at her computer in August. Therefore, the date of discovery is likely sometime between Rebecca's return in August and September 13 or 14, 2004.

8. The court explained:
   I think that whether one views the statements as rhetorical, as Mr. Powell testified, or as

Dennis began revealing tidbits of information to her children, establishing his possession of her e-mails as a credible threat.[9] Rebecca claimed that this threat of exposure dominated their property division negotiations.

Though the motion focused on the Rule 60(b)(3) claim, Rebecca argued that she was alternatively entitled to relief under Rule 60(b)(6). She offered as the basis of that argument that the property settlement was "not well thought out and ... highly inequitable even on its face."

Superior Court Judge Sharon L. Gleason held an evidentiary hearing on December 1, 2006, and heard closing arguments on December 7, 2006. The court, in an oral decision, denied Rebecca's Rule 60(b) motion. It later awarded Dennis Civil Rule 82 attorney's fees and costs. Rebecca appeals.

## III. DISCUSSION

### A. Standard of Review

■■■ A party may seek relief from a final judgment by filing a timely motion under Rule 60 of the Alaska Rules of Civil Procedure. We review the denial of a motion for relief from judgment for an abuse of discretion.[10] We will find an abuse of discretion when we are "left with a definite and firm conviction, after reviewing the whole record, that the trial court erred in its ruling."[11]

■■■ We review a superior court's award of attorney's fees under Rule 82 for an abuse of discretion.[12] Whether the superior court applied the appropriate legal standard in its

consideration of a fee petition presents a question of law that we review de novo.[13]

### B. Rebecca's Rule 60(b) Motion Was Timely.

■ Dennis briefly argues that Rebecca's claims under Rule 60(b)(1) and (3) are time barred.[14] While Rebecca filed her motion within one year of the divorce judgment, Dennis contends that the motion did not meet the independent requirement in Rule 60(b) that the motion "shall be made within a reasonable time." The superior court did not make an express ruling on timeliness, but apparently found the motion timely because it reached the merits of Rebecca's claims.

We agree with the superior court's implicit finding of timeliness. Initially, it appears that Dennis waived this argument at the evidentiary hearing. His lawyer explained, "Just for clarification, in terms of Mrs. Powell's motion under 60(b)(3). It would appear that that is—that the motion is timely."

Moreover, the case Dennis cites in support of his argument, *Sandoval v. Sandoval*,[15] is unavailing. In *Sandoval* we concluded that the superior court did not abuse its discretion by finding that a movant's Rule 60(b) motion filed eleven months after the judgment was untimely.[16] Thus *Sandoval* was decided on a different procedural posture than the present case and involved a longer delay than the present case. It is telling that Dennis does not claim that Rebecca's delay prejudiced his case.[17]

threatening, as Ms. Powell testified, perhaps the—how it was heard and how it was conveyed, both parties were accurate in that regard. I simply don't know. They heard and conveyed what they thought, and interpreted it differently.

9. Two of Rebecca's children testified that Dennis revealed information regarding Rebecca's affair to them.

10. *Dewey v. Dewey*, 969 P.2d 1154, 1157 (Alaska 1999).

11. *Hopper v. Hopper*, 171 P.3d 124, 128 (Alaska 2007) (quoting *McGee v. McGee*, 974 P.2d 983, 987 (Alaska 1999)).

12. *Lowe v. Lowe*, 817 P.2d 453, 460 (Alaska 1991).

13. *See McDonald v. Trihub*, 173 P.3d 416, 420 (Alaska 2007).

14. Dennis does not make this argument with respect to Rebecca's Rule 60(b)(6) claim.

15. 915 P.2d 1222, 1223–24 (Alaska 1996).

16. *Id.*

17. *See Alaska Placer Co. v. Lee*, 502 P.2d 128, 131 (Alaska 1972) (upholding as being made within a reasonable time a Rule 60(b)(1) motion filed forty-nine days after discovery of a mistake and noting that there was no indication of prejudicial delay).

## C. Rebecca Waived Her Claim to Relief Under Rule 60(b)(1).

■ In her motion to vacate the property settlement, Rebecca did not explicitly rely on Rule 60(b)(1) as a basis for relief. During closing argument, the superior court wanted Rebecca's attorney to explain the specific subsections of Rule 60(b) that Rebecca was invoking. Her attorney conceded that Rebecca's claim of mistake was more properly viewed as a claim under subsection (b)(3) because Dennis's alleged misconduct directly caused the mistake.[18] The superior court accordingly denied relief under Rule 60(b)(1) explaining that, "[ (b) ](1), as I clarified with Mr. Eschbacher [Rebecca's attorney], is not really applicable to the facts that were alleged in this case."

On appeal, Rebecca argues that she never learned the value of Dennis's retirement account before the property allocation and, thus, that her waiver of any rights to the account constituted a mistake justifying relief from the judgment. She also argues that Dennis's alleged misconduct regarding her e-mails with Miles deterred her from seeking legal advice regarding the property division, which led to her mistake.

Dennis responds that Rebecca, through her attorney, disclaimed Rule 60(b)(1) as a ground for relief. He further argues that Rebecca knew that she was entitled to a portion of the retirement account but deliberately chose to waive any claim to it.

Given that Rebecca's attorney specifically agreed that Rebecca's claim of mistake was properly viewed as a claim of misconduct or coercion under Rule 60(b)(3), we conclude that the superior court did not err when it determined that Rebecca waived any claim to relief under Rule 60(b)(1).

## D. The Superior Court Properly Denied Relief Under Rule 60(b)(3).

■ Rebecca sought relief under Rule 60(b)(3), contending that she only accepted the property division because Dennis threatened to disclose the e-mails documenting her affair to her family, friends, and colleagues. The superior court found that Rebecca might have interpreted Dennis's statement—to the effect of "what would people think if they knew about the affair"—as a threat, but that Dennis meant it to be rhetorical. The court found "quite persuasive" Rebecca's August 30, 2004 e-mail to Miles in which she stated her discovery that Alaska is a no-fault divorce state, meaning that her affair would not affect her rights to the marital property. Examining the text of later communications, the court explained that:

> really, the tone of communications in the end of October, when the negotiations took place, has no hint of any concern by Ms. Powell of a sense of over-reaching, of feeling in any way threatened, or that, "she better not push too hard," or, "who knows what will happen." There's simply an indication of two competent adults negotiating a property division, and without any sense of one person holding anything over the other person. . . .

The court concluded that it did not "find on balance that Ms. Powell has established by clear and convincing evidence . . . that any misconduct of Mr. Powell . . . was a factor with the parties' property decision agree-

---

18. The exchange was:
Court: All right. There is one other topic I wanted.
Eschbacher: Yes, ma'am.
Court: 60(b)(1), mistake, inadvertent surprise or excusable neglect. Which one are you—or, which ones are you alleging of those?
Eschbacher: Well, now, you mean under—are you talking about 60(b)(1)?
Court: Correct. I mean, as I read your brief, you are alleging alternative bas[e]s (1), (3) and (6).
Eschbacher: That's correct.
Court: And, so, (b)[ (1) ] is mistake, inadvertent surprise or excusable neglect. And my question is . . .
Eschbacher: It would be—it would probably be "mistake, inad . . ."—well, it would sorta follow under the excusable neglect or the mistake.
Court: What was the mistake?
Eschbacher: Well, it wasn't a mistake. It would be the excusable neglect, because she didn't—because she was laboring under the threat.
Court: So isn't that really a(b)(3)?
Eschbacher: It would be a(b)(3). You're right.
Court: I mean, I . . .
Eschbacher: It would—it certainly does fit more neatly under (b)(3). I don't dispute that.

ment that they reached."[19]  Moreover, the superior court distinguished Rebecca's citation to persuasive authorities, finding that the cases she cited involved coercion that was more extreme than Dennis's alleged acts.

On appeal, Rebecca argues that Dennis threatened that he would reveal her e-mails with Miles to her family, friends, and colleagues. Rebecca contends that Dennis's statement was coercive, even if Dennis did not intend his statement to be a threat. Rebecca argues that Dennis established a credible threat by revealing information about the affair to her children.

Rebecca contends that Dennis's conduct met the definition of extortion contained in Alaska's criminal code[20] and that this justifies relief under Rule 60(b)(3).  But her argument assumes that Dennis threatened that he would reveal Rebecca's e-mails with Miles if she did not accept a lopsided property division.  While Dennis conceded that he made one rhetorical statement to Rebecca, he never admitted, and the superior court in its findings never found, that Dennis tied his statement into the property negotiations. Moreover, the superior court never found that Dennis intended his statement to be a threat.

Rebecca attempts to distinguish the superior court's findings regarding the tenor of her e-mails with Miles and Dennis by comparing the dates of her e-mails to the dates of Dennis's discovery of her e-mails and Dennis's alleged threat.  Rebecca may be correct that the superior court's reliance on an August 30 e-mail in support of its findings that Rebecca was not concerned about Dennis revealing her affair was misplaced.  But Rebecca ignores the superior court's findings that her e-mails during the October negotiations—negotiations occurring after Dennis's discovery of Rebecca's e-mails with Miles—

still demonstrated a lack of fear or coercion. For example, in an e-mail from mid-October, Rebecca sent Dennis a proposal for a property division and suggested, "Let me know what you think or come back with something else.  I REALLY want to work this out without attorneys—it would give each of us, immediately, most of our $3500 back." Moreover, the tenor of non-negotiation e-mails between Dennis and Rebecca from October 2004 through 2005 reflected no signs of intimidation or coercion.

After reviewing the record as a whole, we conclude that the superior court did not abuse its discretion by denying relief under Rule 60(b)(3).

### E. The Superior Court Properly Denied Relief Under Rule 60(b)(6).

Rebecca claims that the ratio of assets in the property division is so disproportionately in favor of Dennis that it is facially unjust and must be vacated.  Because there is a presumption that an equal division is an equitable division,[21] Rebecca claims that there should be a presumption that an unequal division is an inequitable division of assets.[22]

Rebecca also argues that Dennis's behavior regarding the e-mails documenting her affair and her lack of knowledge regarding the value of Dennis's retirement account presented an extraordinary circumstance justifying relief from the judgment.  Dennis responds that the factors that this court ordinarily considers in a Rule 60(b)(6) analysis do not justify reversal of the superior court's decision.

#### 1. Most of Rebecca's claims are not cognizable under Rule 60(b)(6).

Dennis initially argues that Rebecca's Rule 60(b)(6) motion is based largely on impermis-

---

**19.**  A party who asserts fraud, misrepresentation, or other misconduct of an adverse party as a ground for relief under Rule 60(b)(3) must prove these assertions by clear and convincing evidence.  *Babinec v. Yabuki,* 799 P.2d 1325, 1333 (Alaska 1990).

**20.**  AS 11.41.520(a)(3) ("A person commits the crime of extortion if the person obtains the property of another by threatening or suggesting that

either that person or another may ... expose confidential information or a secret....").

**21.**  *See Lowdermilk v. Lowdermilk,* 825 P.2d 874, 877 (Alaska 1992).

**22.**  While this argument might have some merit, we note that it is not the contrapositive of the recognized presumption.  Accordingly, it is not an accurate statement as a matter of logic.

sible considerations. We have consistently explained that "[a] party can invoke subsection (b)(6) only if none of the other five clauses apply and 'extraordinary circumstances' exist."[23] Thus "clause (6) and the first five clauses of Rule 60(b) are mutually exclusive. Relief under clause (6) is not available unless the other clauses are inapplicable."[24] The superior court recognized the narrow scope of Rule 60(b)(6) in its decision when it explained that Rule 60(b)(6) "really is not meant to apply when you almost make a(b)(3) showing ... but not quite, and then you say, well, then you should apply (b)(6) for relief."

Rebecca argues that she did not know the estimated present value of Dennis's retirement account. But this assertion "amount[s] to a claim of mistake or inadvertence under subsection (1)."[25] Rebecca argues that Dennis misled her about the value of his retirement account. But this assertion amounts to a claim of misconduct under subsection (3) or of newly discovered evidence under subsection (2).[26] Rebecca also argues that she was pressured and threatened into accepting the property division. But this assertion is essentially a claim of duress under subsection (3).[27]

After removing impermissible considerations, Rebecca only has one argument remaining: the sizable disparity in the ratio of assets divided between Rebecca and Dennis. However, Rebecca ties this disparity to her claims of Dennis's coercion; she does little to argue that the disparity independently justifies relief.

**23.** *Juelfs v. Gough,* 41 P.3d 593, 597 (Alaska 2002) (quoting *Lacher v. Lacher,* 993 P.2d 413, 419 (Alaska 1999)).

**24.** *Vill. of Chefornak v. Hooper Bay Constr. Co.,* 758 P.2d 1266, 1270 (Alaska 1988) (quoting *Farrell v. Dome Labs.,* 650 P.2d 380, 385 (Alaska 1982)).

**25.** *Lowe v. Lowe,* 817 P.2d 453, 457 (Alaska 1991).

**26.** *See id.; O'Link v. O'Link,* 632 P.2d 225, 230 (Alaska 1981).

**27.** *J.C. v. M.L.C.,* 668 P.2d 1351, 1352 (Alaska 1983) (holding that alleged threats that wife would report husband to the IRS for tax evasion

**2. The superior court did not abuse its discretion when it denied Rule 60(b)(6) relief on the merits.**

We have highlighted four factors that should be considered in a Rule 60(b)(6) motion in the context of a property division in a final divorce. The factors are: "(1) the fundamental, underlying assumption of the dissolution agreement had been destroyed; (2) the parties' property division was poorly thought out; (3) the property division was reached without the benefit of counsel; and (4) the [property in dispute] was the parties' principal asset."[28] Because these factors are rooted in equity, relief can be granted even if some factors are not applicable.[29]

The superior court analyzed these four factors and determined that the factors did not weigh in favor of vacating the judgment. Assuming that Rebecca's claims are cognizable under Rule 60(b)(6), we conclude that the superior court did not abuse its discretion by denying relief under this subsection.

The superior court found the first factor—considering if a fundamental, underlying assumption of the dissolution agreement has been destroyed—inapplicable. The court determined that the alleged oral understanding that Dennis would allow Rebecca's children free access to the Sterling property was not a fundamental, underlying assumption of the dissolution agreement. The court reasoned that, if it was, then Rebecca, a real estate agent, would not have relied on purely oral assertions of intentions. Given that Rebecca does not contest the superior court's resolution of this factor, we will not disturb the superior court's assessment.

if the husband did not agree to admit paternity of child must be considered under Rule 60(b)(3)). *But see Lowe,* 817 P.2d at 458 (considering threats in the framework of Rule 60(b)(6)).

**28.** *Lacher,* 993 P.2d at 419 (quoting *Schofield v. Schofield,* 777 P.2d 197, 202 (Alaska 1989)).

**29.** *See Clauson v. Clauson,* 831 P.2d 1257, 1260–61 (Alaska 1992). These factors are "not strictly necessary conditions but, rather, are particular instantiations of the equitable factors required to" justify relief under Rule 60(b)(6). *Id.* at 1261.

The superior court found the second factor—considering if the parties' property division was poorly thought out—inapplicable given the extent of the negotiations between Rebecca and Dennis and the detailed paperwork that they completed. Rebecca argues that the disproportionate ratio of asset distribution, combined with her general lack of knowledge about the value of Dennis's retirement account, demonstrates that the property division was poorly thought out. Rebecca further argues that Dennis's alleged misconduct involving the e-mails clouded her examination of the division. Dennis's response echoes the superior court's reasoning: there was an exchange of e-mails between the parties and a detailed division of assets in the proposed property division.

We conclude that the superior court did not abuse its discretion in assessing the second factor. The superior court reasonably examined the complete and detailed nature of the property division and concluded that Rebecca and Dennis thought about the allocation. The court's rejection of Rebecca's coercion claim under Rule 60(b)(3) undermines her attempt to raise coercion in the context of Rule 60(b)(6). Rebecca also argues that she lacked knowledge of the size of Dennis's retirement account. But Rebecca knew that she was entitled to part of Dennis's retirement account and she knew at least the approximate annual value of his retirement payments because this figure was listed in the proposed property division.

The superior court found that the third factor—considering if the property division was reached without the benefit of counsel—did not weigh in Rebecca's favor. The court found that counsel were involved and that Rebecca had the benefit of counsel in connection with the divorce. The court noted, however, that counsel for Rebecca was not present at the divorce hearing. Rebecca argues that she did not discuss the property division with a lawyer and explains that she did not do so because Dennis threatened her. Dennis responds that Rebecca had the benefit of counsel.

Rebecca's strongest argument is that any legal advice she sought was of a temporary and minimal sort. But the superior court seemed unimpressed with Rebecca's claim that she did not discuss the property division with her attorney. In an e-mail between Rebecca and Dennis, Rebecca encouraged Dennis to negotiate with her without attorneys so that they both could receive a refund of their retainers. Notably, this e-mail was sent in mid-October, after Dennis's alleged threat. Rebecca thus accepted the risks of not having a lawyer in exchange for the benefit of not paying attorney's fees. Rebecca also admitted that she called her attorney explaining that she had reached a property division, but declined the attorney's request to see a copy of the document. Rebecca's explanation is that Dennis coerced her into not discussing the division with her attorney. Given the superior court's rejection of Rebecca's claim of coercion, a ruling we have upheld, we conclude that the superior court did not abuse its discretion in finding that this factor did not favor Rebecca.

The superior court found that the fourth factor—considering if the property in dispute was the parties' principal asset—favored Rebecca because Dennis's retirement account was a principal asset acquired by the parties during the marriage. But the court concluded that this factor alone was insufficient to justify relief based on Rule 60(b)(6). Both Rebecca and Dennis agree with the superior court's characterization of Dennis's retirement account.

Examining these considerations as a whole, only one factor favors granting Rebecca relief from the property division. We conclude that the superior court did not abuse its discretion in denying Rebecca's Rule 60(b)(6) motion.

### F. The Superior Court Did Not Err in Its Award of Attorney's Fees.

After deciding in favor of Dennis, the superior court awarded Dennis $3,255 in attorney's fees and $572 of costs. Rebecca argues that the superior court erred by relying on a Civil Rule 82 prevailing party standard rather than the method of awarding fees used in divorce cases, which is based on the parties' relative economic situations and earning capacities.

Dennis responds that the divorce exception does not apply to Rule 60 motions and argues that the superior court properly followed Rule 82. Dennis also appears to argue that he should have received greater attorney's fees,[30] but his brief does not argue that the superior court made a mistake or that any mistake amounted to an abuse of discretion.[31]

The superior court applied the correct legal standard. Rule 82 governs attorney's fee awards in a Rule 60(b) motion to modify a divorce decree.[32] Because Rebecca does not assert that the court abused its discretion within the framework of Rule 82, we affirm the superior court's award of fees and costs.

## IV. CONCLUSION

We AFFIRM the decision of the superior court.

---

**30.** Dennis's brief states, "The trial court properly awarded $3,255 in attorney fees and $522 in costs." It later asserts, "Mr. Powell is entitled to thirty percent of reasonable actual attorney fees necessarily incurred, which is $3,900. He is also entitled to his full costs of $572 for a total award of $4,472.00."

**31.** Moreover, Dennis did not appeal the superior court's award. He is only an appellee. See Alaska R.App. P. 204(g).

**32.** McGee v. McGee, 974 P.2d 983, 992 (Alaska 1999) (quoting Lowe, 817 at 460); see also L.L.M. v. P.M., 754 P.2d 262, 263–64 (Alaska 1988).