**James Dwayne RAY, Appellant,**

v.

**Margaret Etta RAY, Appellee.**

No. S–11269.

Supreme Court of Alaska.

July 1, 2005.

**574**

Justin R. Eschbacher, Law Offices of G.R. Eschbacher, Anchorage, for Appellant.

Leroy K. Latta Jr., Assistant Attorney General, Anchorage, and Gregg D. Renkes, Attorney General, Juneau, for Appellee, State of Alaska, Child Support Enforcement Division.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

*OPINION*

EASTAUGH, Justice.

## I. INTRODUCTION

James Ray argues that because the superior court found in 1993 that James was not the father of C.R., the 1995 order requiring him to pay child support for C.R. was void for lack of subject matter jurisdiction. He therefore argues that when he moved in 2003 for relief from the 1995 order, Alaska Civil Rule 60(b)(4) entitled him to retroactive relief. We affirm the denial of his motion for retroactive relief. Even after biological paternity was disestablished in 1993, the court had subject matter jurisdiction to enter the 1995 support order. James raises no other theory that would entitle him to retroactive relief.

## II. FACTS AND PROCEEDINGS

Margaret Ray gave birth to four children during her marriage to James Ray. James Ray's March 1992 divorce complaint alleged that the youngest child, C.R., was not his biological son, but that he "love[d] and treat[ed] the child as [his] natural child." His supporting affidavit stated: "I ... am not the natural father of [C.R.] although I do love the child and have treated him as my own and as part of the family." On April 1, 1992 Superior Court Judge Elaine M. Andrews awarded James interim custody of all four children. Master Andrew Brown heard evidence and argument on May 3, 1993 concerning the divorce and child custody, and issued a report containing proposed findings and conclusions. The report found that C.R. was a child of the marriage, but it also contained this passage concerning C.R.:

> At the May 3, 1993 hearing, Ms. Ray raised the allegation that [C.R.] might not be Mr. Ray's child. However, this is a default judgment case due to the fact that Ms. Ray did not file an answer, so she may not now raise any legal issue of paternity. Also, the evidence shows that Mr. Ray has been the only father figure in [C.R.'s] life, whether or not he is the child's biological father.

The superior court approved the report and dissolved the marriage on June 4, 1993.

By agreement approved by the superior court, custody of all four children was transferred to Margaret on August 30, 1993. The court required James to pay child support totaling $900 a month but did not explain how it derived that figure or specifically whether that figure included support for

C.R.[1] On December 23, 1993, Superior Court Judge Peter A. Michalski entered findings and a custody and visitation order that stated that "both parties acknowledge that James Dwayne Ray is not the biological father of [C.R.]." The court's order also found that "a father-son relationship does exist and the child shall be included as a child of the parties' marriage for purposes of custody and visitation." These findings were incorporated into the court's final divorce decree of December 23, 1993.

In late 1994 James Ray, through counsel, filed a motion asking the court to establish his child support obligation. James also submitted a child support guidelines affidavit that stated that he owed $539.52 a month for support of four children. James's application for the services of the Alaska Child Support Enforcement Division (CSED) stated that he was the father of C.R. In early 1995 Superior Court Judge Rene J. Gonzalez entered the child custody and support order that James had proposed. There was no objection to or appeal from this order.

On May 13, 2003, James Ray filed a pro se superior court motion seeking a change of custody, support, and visitation, a combined affidavit and memorandum, and a proposed order. His motion asked the court to "stop all child support" for C.R. retroactive to the date of the divorce and stated that C.R. was not his biological or adopted son. James alleged in his motion that he had "not been given visitation rights as court-ordered" and that he had been allowed to see C.R. only three times since the divorce. His supporting affidavit and memorandum alleged that C.R. was included in the divorce order because it had been "determined" that there was an existing "father-son relationship."

James's affidavit also stated that the "father-son relationship was stopped when [C.R.'s mother] left the state within a week of divorce and never allowed me visitation with [C.R.]. [C.R.'s] father-son relationship was at the time and still is with Leo Pettit." James's proposed order stated that "James Dwayne Ray is not the biological father of [C.R.]. A father-son relationship does not exist."

CSED argued in opposition that laches barred James's motion and that he had not shown a right to relief under any subsection of Civil Rule 60(b). CSED also contended that if James were to prevail, he would still owe arrearages and that only prospective relief would be available to him.

Superior Court Judge John Suddock denied James's motion "for the reasons set forth in CSED's opposition" and commented:

A stepfather who agrees to pay support for a stepchild is subject to Alaska Rule of Civil Procedure 90.3. Plaintiff has shown no basis under that rule for a modification of child support. A parent cannot simply abandon a child, even if the parent is denied visitation. Mr. Ray's remedy if he wants to visit with the child is to make a Motion to Enforce the prior visitation order, or to enter a new order in light of changed circumstances.[2]

James, by now again represented by counsel, moved for reconsideration, alleging that he was entitled to relief because the 1995 child support order was void. The state opposed, arguing both that "there is no evidence that Mr. Ray's paternity has ever been disestablished" and that the support order was not void because he had sought the order and did not appeal when it was entered. James replied through counsel, claim-

1. Judge Andrews based her support order on Master Brown's oral recommendation. It appears that Master Brown used the multiplier for four children rather than for three to calculate James's $900-a-month support payment. This suggests that C.R. was included in the support award.

2. Civil Rule 90.3 governs the procedure for imposing a child support award on a non-custodial parent. Rule 90.3(h) dictates when an existing child support award can be modified. This subpart states:

(1) *Material Change of Circumstances.* A final child support award may be modified upon a showing of a material change of circumstances as provided by state law. A material change of circumstances will be presumed if support as calculated under this rule is more than 15 percent greater or less than the outstanding support order....
(2) *No Retroactive Modification.* Child support arrearage may not be modified retroactively, except as allowed by AS 25.27.166(d)....

ing that Judge Michalski's 1993 order made it clear that James was not C.R.'s biological father. He also argued that his request for a child support order was at most based on a promise that was unenforceable for lack of consideration. Judge Suddock denied reconsideration, reasoning:

> A child born during a marriage is presumed the child of the husband. The Court never established as a matter of fact that this was not the case, even though the parties took that position. Such a determination was irrelevant, because Mr. Ray wished to be deemed the father, with rights of visitation. He affirmatively moved to have a child support order put in place, and raised no objection to inclusion of [C.R.] with the three undisputed children of the marriage.

The court instructed James to have a DNA test if he wished to disestablish paternity; he could then move to terminate support prospectively.

James appeals.

## III. STANDARD OF REVIEW

■ Because the legal effect of a court's findings of fact is a question of law, we review de novo the question whether the superior court's 1993 findings regarding custody and visitation was sufficient to disestablish James's paternity of C.R.[3] Denial of an Alaska Civil Rule 60(b) motion and denial of a motion for reconsideration will only be disturbed if the court has abused its discretion.[4] A superior court abuses its discretion when we are "left with a definite and firm conviction on the whole record that the trial

judge has made a mistake."[5] Whether a judgment is void under Alaska Civil Rule 60(b)(4) is a question of law.[6] In resolving a question of law, we exercise our independent judgment and adopt the rule of law that is "most persuasive in light of precedent, reason, and policy."[7]

## IV. DISCUSSION

### A. Whether Biological Paternity Was Disestablished Before Entry of the Support Order

■ James contends that he was entitled to retroactive relief from the 1995 support order because it is void for lack of subject matter jurisdiction. He bases this contention on the 1993 order which, he claims, disestablished his paternity of C.R. and consequently deprived the superior court of jurisdiction to require him to pay child support for C.R. We first consider his underlying assertion, that paternity was disestablished in 1993.

■ Although the husband of a married woman is presumed to be the father of any child born to the wife during the marriage,[8] this presumption can be overcome by clear and convincing evidence.[9] James was presumed to be C.R.'s father because he was married to C.R.'s mother when C.R. was born. James's divorce complaint and supporting affidavit stated that he was "not the natural father of [C.R.]." The court's 1993 findings and order on custody and visitation found that "[t]hree minor children were born

---

3. *State v. Wetherelt*, 931 P.2d 383, 387 (Alaska 1997).

4. *Dewey v. Dewey (Dewey I)*, 886 P.2d 623, 626 (Alaska 1994). *See also Neal & Co., Inc. v. Ass'n. of Vill. Council Presidents Reg'l Hous. Auth.*, 895 P.2d 497, 506 (Alaska 1995).

5. *Jensen v. Froissart*, 982 P.2d 263, 266 (Alaska 1999).

6. *Id.*

7. *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

8. AS 18.50.160(d) provides:

> If the mother was married at conception, during the pregnancy, or at birth, the name of the husband shall be entered on the certificate as the father of the child unless
> (1) paternity has been lawfully determined otherwise by a tribunal, in which case the name of the father, if determined by a tribunal, shall be entered; or
> (2) both the mother and mother's husband execute affidavits attesting that the husband is not the father and that another man is the father, and the mother and the other man execute affidavits attesting that the other man is the father. . . .

9. *Wetherelt*, 931 P.2d at 387; *Smith v. Smith*, 845 P.2d 1090, 1092 (Alaska 1993).

to the parties of the marriage"[10] and that "both parties acknowledge that James Dwayne Ray is not the biological father of [C.R.]." These 1993 findings were sufficient to disestablish James's biological paternity with regard to C.R. At no subsequent time did the superior court enter a finding that re-established James's biological paternity of C.R.

It was therefore technically incorrect to hold in 2003 that the superior court had "never established as a matter of fact" that James Ray was not C.R.'s father. Likewise, the order denying reconsideration incorrectly stated that James was deemed "the father in fact, until he successfully disestablishes paternity with a DNA test."[11]

## B. The Superior Court Had Authority To Enter the 1995 Support Order.

■ Having concluded that James's biological paternity of C.R. was disestablished in 1993, we next consider James's argument that disestablishment ended any duty to support C.R., entitling him to Alaska Civil Rule 60(b) relief from the 1995 support order.[12]

James argues that he "may have mistakenly thought he had a duty to support C.R.," that his "prior attorney may have mistakenly included C.R. on the child support order,"

and that he "may simply have wanted to place in writing a promise to support C.R." We do not know what motivated James to include C.R. in his 1995 motion to establish child support. If any of his present explanations is correct, James had ample opportunity to seek correction of his "mistake" after entry of the support order in 1995. Rule 60(b)(1) allows relief from a judgment based on "mistake, inadvertence, surprise or excusable neglect" if the motion for relief is filed "not more than one year after the date of notice of the judgment or orders." But James never filed a timely motion for relief under Rule 60(b)(1) and he filed his 2003 motion long after the one-year deadline had passed.[13]

■ James's main argument is that the 1995 support order was void. He reasons that the disestablishment order deprived the court of subject matter jurisdiction to enter an order requiring James to support C.R. Alaska Civil Rule 60(b)(4) permits relief from a void judgment if the issuing court lacked subject matter jurisdiction or violated due process.[14] Void judgments may be attacked at any time.[15]

James reasons that because his paternity had been disestablished, the superior court had no authority under AS 25.24.160(a) to impose a support order for C.R.[16] Although it

---

**10.** Neither party disputed the paternity of the other three children born during the marriage.

**11.** We have been informed that a DNA test was subsequently performed, and that the superior court relied on that test in granting James prospective relief from the 1995 support order.

**12.** Civil Rule 60(b) states:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons:
> (1) mistake, inadvertence, surprise or excusable neglect;
> (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable

> that the judgment should have prospective application; or
> (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the date of notice of the judgment or orders as defined in Civil Rule 58.1(c)....

**13.** His 2003 pro se motion papers cited no rule in support; his lawyer's motion for reconsideration characterized the pro se motion as having sought relief under Civil Rule 60(b)(4), on the theory the support order was void, and seems to disavow requesting relief under any other Rule 60(b) subpart.

**14.** *State v. Maxwell*, 6 P.3d 733, 736 (Alaska 2000). James does not argue that the superior court violated his due process rights.

**15.** *Dewey v. Dewey (Dewey II)*, 969 P.2d 1154, 1159–60 (Alaska 1999).

**16.** AS 25.24.160(a) states:
> In a judgment in an action for divorce or action declaring a marriage void or at any time after judgment, the court may provide

is true that the language of this statute only explicitly authorizes entry of support orders for children of the two divorcing parties, we have previously enforced support orders that fall outside the statute's plain language.[17]

We have already rejected a nearly identical argument. In *J.C. v. M.L.C.*, the non-biological father argued that the superior court did not have subject matter jurisdiction to enter a support order because the child was not "of the marriage."[18] We held that, because "the parties are residents of the State of Alaska and the superior court is competent to render judgment concerning child custody and support, the superior court did not lack subject matter jurisdiction."[19]

In late 1994 James voluntarily filed documents with the superior court listing C.R. as his child. The child support guidelines affidavit he filed with his motion to establish child support asked the court to impose a monthly obligation of $539.52. This amount was calculated by multiplying James's 1993 income by 0.36, the multiplier that applies when support is calculated for four children.[20] As we said in *J.C.*, James's motion could be "interpreted as an agreement to support the child regardless of its paternity. We know of no reason why the superior court would lack authority to enforce such an agreement."[21]

We therefore reject James's contention that it was error to deny him relief under Rule 60(b)(4).

## C. We Need Not Consider James's Pro Se Claim of Changed Circumstances.

At oral argument we were told that the superior court granted James relief after a genetic paternity test established that he was not C.R.'s biological father. The appellate record does not contain the order; it was apparently entered sometime after James served his pro se modification motion on May 13, 2003. If so, it potentially raises a question of whether relief should have become effective as of the service date of James's motion. Relief from that date forward would not have violated the prohibition on retroactive modification of child support orders.[22]

But James does not argue on appeal that the change-of-circumstances grounds cited in his May 13, 2003 motion entitled him to relief; he has therefore waived any such issue.

Moreover, such an argument would be meritless. His 2003 motion papers alleged that the 1995 support order should be modified because he was denied visitation with C.R. But they also stated that his relationship with C.R. changed "within a week of the divorce," long before the support order was entered in early 1995. James's 2003 motion therefore did not allege facts establishing that circumstances changed after entry of

(1) for the payment by either or both parties of an amount of money or goods, in gross or installments that may include cost-of-living adjustments, as may be just and proper for the parties to contribute toward the nurture and education of their children, and the court may order the parties to arrange with their employers for an automatic payroll deduction each month or each pay period, if the period is other than monthly, of the amount of the installment; if the employer agrees, the installment shall be forwarded by the employer to the clerk of the superior court that entered the judgment or to the court trustee, and the amount of the installment is exempt from execution. . . .

17. *See Dewey II*, 969 P.2d at 1160 (enforcing voluntary agreement to support stepchild). *See also T.P.D. v. A.C.D.*, 981 P.2d 116, 121 (Alaska 1999) (acknowledging that paternity by estoppel can give rise to duty to support non-biological child); *J.C. v. M.L.C.*, 668 P.2d 1351, 1353 (Alas-

ka 1983) (upholding agreement to support non-biological child).

18. *J.C. v. M.L.C.*, 668 P.2d 1351, 1353 (Alaska 1983).

19. *Id.*

20. Alaska Civil Rule 90.3(a) provides that the amount of the child support award is:

the adjusted annual income of the non-custodial parent multiplied by a percentage. . . .
(2) The percentage by which the non-custodial parent's adjusted income must be multiplied in order to calculate the child support award is:
(A) 20% (.20) for one child;
(B) 27% (.27) for two children;
(C) 33% (.33) for three children; and
(D) an extra 3% (.03) for each additional child.

21. *J.C.*, 668 P.2d at 1353.

22. Alaska R. Civ. P. 90.3(h)(2).

the 1995 support order.[23]

## V. CONCLUSION

Because the superior court had jurisdiction to enter the 1995 child support order, it was not void. The superior court therefore correctly denied James's request for retroactive relief. AFFIRMED.

---

**23.** *See Bunn v. House,* 934 P.2d 753, 758 (Alaska 1997) (listing factual situations that satisfy the "material change in circumstances" requirement of Civil Rule 90.3); *Arndt v. Arndt,* 777 P.2d 668, 670 (Alaska 1989) (considering alteration in custody arrangement in "material change of circumstances" analysis).