*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| ROBERT C.O. GROSS | ) | |
| | ) | Supreme Court No. S-16302 |
| Appellant, | ) | |
| | ) | Superior Court No. 1JU-12-00783 CI |
| v. | ) | |
| | ) | O P I N I O N |
| DAWN ALEXIA WILSON, | ) | |
| | ) | No. 7262 – July 27, 2018 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, First Judicial District, Juneau, Louis J. Menendez, Judge.

Appearances: Joseph W. Geldhof, Law Office of Joseph W. Geldhof, Juneau, for Appellant. Dawn Alexia Wilson, pro se, Juneau, Appellee.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

STOWERS, Chief Justice.

## I. INTRODUCTION

Robert Gross and Dawn Wilson married in August 1992, and Gross filed for divorce in August 2012. The parties resolved the issues raised in the divorce action in a written settlement agreement incorporated into a divorce decree in March 2014. The final agreement provided that Wilson was to receive an amount equal to 50% of the military retirement and Veterans Administration (VA) disability pay that Gross received for his service in the United States Coast Guard (USCG). A little over a year later Gross

reduced his monthly payment to Wilson by an amount equal to 50% of his disability payments, and Wilson filed a motion for enforcement of the terms of the settlement agreement. Gross opposed the motion, arguing that the Uniformed Services Former Spouses' Protection Act (USFSPA)[1] exempts VA payments from allocation during divorce as marital property; he also argued that he had misunderstood the agreement. The superior court ordered Gross to resume payments pursuant to the agreement and to pay arrearages. Gross appeals. We affirm the superior court's order because Gross had no procedural basis for bringing a collateral attack on his divorce decree.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

Gross enlisted in the USCG in February 1987. Gross and Wilson married in August 1992, and they have four children. Gross filed for divorce in August 2012. In a November 2013 hearing before a magistrate, after a full day of mediation with retired Superior Court Judge Patricia A. Collins, the parties and their attorneys reached an agreement; both attorneys and Judge Collins described on record how the parties planned to address Gross's military retirement benefits. Both attorneys explained that Gross's retirement payments, including disability payments, would be divided 50/50 between the parties. Judge Collins also articulated the parties' understanding and agreement:

> [T]he final language of the agreement that the parties anticipate submitting to the court will provide that, in the future, should Mr. Gross elect to take any action that might reduce what would otherwise be retirement benefits for which Ms. Wilson would have a claim, he will be responsible for reimbursing her. As Your Honor may know, disability payments are viewed as separate, not marital property, by the

---

[1]    10 U.S.C. § 1408 (2012).

federal government; but [the] divorce court, in its equitable jurisdiction, can ensure that there's fairness. The parties today tried to reach a fair result, such that they have, in essence, agreed to divide the retirement, which includes disability, which is received in lieu of what would have otherwise been retirement, on a 50-50 basis.

At a second hearing, held in December 2013, Gross indicated through his attorney that he was prepared to go forward as long as the property settlement agreement reached with Judge Collins's assistance in November was not reopened. When Gross was given an opportunity to comment, he responded, "I'm good."

The court issued a Judgment and Decree of Divorce in March 2014. The divorce decree incorporated the parties' Child Custody, Child Support and Property Settlement Agreement signed on the same day. When the settlement agreement was placed on the record, both Gross and Wilson testified that they were familiar with the terms of the agreement and were satisfied with it. Paragraph 11 of the settlement agreement required Gross to pay Wilson $888.22 per month based on his USCG retirement program:

> [Wilson] shall receive 50% of the total USCG military retirement monthly pay (sometimes referred to as the aggregate of the retirement and disability pay) that [Gross] receives from the USCG after the SBP premium for the survivor benefit covering [Wilson] has been paid . . . . The parties understand that the USCG will directly pay [Wilson] 50% of what it defines as the "disposable retirement pay (DRP)." However, this DRP figure does not include the VA compensation/disability monies received by [Gross]. [Gross] therefore agrees to pay to [Wilson] on the first day of each and every month throughout his lifetime an amount, over and above the 50% portion of the DRP paid to her by the USCG, sufficient to accomplish [Wilson's] receipt of fifty percent (50%) of the total USCG monthly military retirement pay (including the VA Comp. and/ or disability portions) reduced

only by payment of the SBP premium. . . .  If [Gross] or the USCG does anything that results in a reduction of [Wilson's] above-described share of the military retirement, [Gross] will reimburse [Wilson] for the reduction.[2]

## B.    Proceedings

In May 2015 Wilson, now proceeding pro se, filed a motion for enforcement of the terms of the March 2014 settlement agreement.  She stated that Gross had made appropriate retirement payments pursuant to the parties' settlement agreement until May 2015, but that he then unilaterally reduced the amount of monthly retirement benefits by $170, citing statutes pertaining to the division of disability pay.  Gross opposed the motion and filed a cross-motion for an order denying enforcement of the "claim" for disability, stating that it would be a violation of the USFSPA because that statute "exempts [VA] payments from allocation during divorce as marital property." Gross also attached an affidavit declaring that he did not know how paragraph 11 was included in the settlement agreement and that he had not understood the settlement agreement to divide disability payments.

The court referred the cross-motions to a superior court special master. Neither party requested an evidentiary hearing, and after oral argument the master issued his report and recommendation to the superior court.  The master recommended that Wilson's motion be granted and Gross's denied.  Gross filed objections to the report, and the superior court issued an order granting Wilson's motion to enforce.

---

²    The settlement agreement also included a grid outlining the division of marital property.  In the "Retirements" column, the grid listed "Robert's total USCG military retirement pay minus SBP premium for former spouse (as an example, currently $1,900.00/month minus $123.57 equals $1,776.43). See para. 11." In the corresponding column for Dawn, the grid states "50% of the total retired pay reduced only by payment of the SBP premium (currently $888.22 per month)."

First, the superior court found that "[n]owhere in [Wilson's] motion or in the record of the case is it stated [Gross] was required to make payments from his disability retirement pay to [Wilson]." The court explained that what it "understood from what is contained in the record of the hearings . . . is that the parties negotiated a settlement agreement that did not include [Gross's] disability retirement pay as a direct source for [Gross's] monthly payments to [Wilson]." The court also found there was no order directing that the USCG pay Wilson from Gross's disability pay, nor was there any statement that Wilson was to receive any portion of Gross's disability pay. The court reasoned that Gross's aggregate disability and retirement pay was but a means through which the parties arrived at a fair payment amount as part of what they agreed was a fair and equitable allocation of assets and debt.

Second, the superior court found that the United States Supreme Court's decision in *Mansell v. Mansell*[3] regarding the USFSPA and our decision in *Clauson v. Clauson*[4] did not preclude enforcement of the retirement provision in the parties' settlement agreement. While acknowledging that those cases hold that state courts do not have any power to "equitably divide veterans' disability benefits received in place of waived retirement pay,"[5] the court reasoned that the master's recommendation simply enforced a contractual obligation requiring Gross to pay Wilson a specific amount from any of his resources. Moreover, the court concluded that, even if the payments originated from Gross's disability pay, nothing in the USFSPA or *Mansell* prevents a veteran from voluntarily contracting to pay a former spouse a sum of money that may originate from disability payments.

---

[3]     490 U.S. 581 (1989).

[4]     831 P.2d 1257 (Alaska 1992).

[5]     *See id.* at 1262.

Third, the court found Gross's assertions that he was taken by surprise when he learned the contents of paragraph 11 "both hard to accept and inconsistent with the settlement agreement," on-record affirmations by the parties, clear statements by both counsel and Judge Collins at the November 2013 hearing, and Gross's attorney's reaffirmation of the settlement agreement at the December 2013 hearing. Thus, the court concluded that Gross was well aware of the contents of paragraph 11, including its indemnification provision requiring him to reimburse Wilson if he took any action that would reduce payments to Wilson.

Finally, the court noted that Gross had offered no basis under Alaska Civil Rule 60(b) for bringing a collateral attack seeking to set aside the property settlement more than a year after it was filed and after both parties testified affirming the agreement. The superior court ordered Gross to resume monthly payments to Wilson pursuant to the agreement, and it ordered the parties to submit further briefing on the amount of arrearages owed to Wilson. Gross appeals.

## III.  STANDARD OF REVIEW

We review a trial court's response to a motion to enforce a divorce decree, as well as most decisions on a request for relief from final judgments, under the abuse of discretion standard.[6] "We will find an abuse of discretion only if the trial court's decision was 'manifestly unreasonable.' "[7] However, we review de novo whether a party is entitled to relief from judgment under Alaska Civil Rule 60(b)(4) "because the validity of a judgment is strictly a question of law."[8] "[T]he intent of the parties when entering

---

[6]     *Johnson v. Johnson*, 394 P.3d 598, 600 (Alaska 2017)

[7]     *Id.* at 601 (quoting *In re Jacob S.*, 384 P.3d 758, 763 (Alaska 2016)).

[8]     *Blaufuss v. Ball*, 305 P.3d 281, 285 (Alaska 2013) (quoting *Leisnoi, Inc.*
(continued...)

a contract is a question of fact and is thus reviewed under the clearly erroneous standard."[9] But "[w]e review a trial court's rulings on questions of law, and the application of law to fact, de novo and adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[10]

## IV. DISCUSSION

The USFSPA governs how state courts may treat military retirement and disability payments received by veterans.[11] The statute was passed in response to the Supreme Court's decision in *McCarty v. McCarty*, which held that federal statutes then governing military retirement pay prevented state courts from treating military retirement pay as community property.[12] The USFSPA grants some, but not all, power back to the states, and it provides that a state may treat as community property, and divide at divorce, a military veteran's disposable retirement pay.[13] But the act exempts from this grant of authority any amount the government deducts as a result of a waiver that the veteran must make to receive disability benefits.[14] In other words, an eligible veteran can voluntarily shift a portion of retirement pay to disability pay, and this portion is not

---

[8]    (...continued)
*v. Merdes & Merdes, P.C.*, 307 P.3d 879, 884 (Alaska 2013)).

[9]    *Rockstad v. Erikson*, 113 P.3d 1215, 1219 (Alaska 2005) (quoting *K & K Recycling, Inc. v. Alaska Gold Co.*, 80 P.3d 702, 712 (Alaska 2003)).

[10]    *Id.*

[11]    10 U.S.C. § 1408(c)(1) (2012).

[12]    453 U.S. 210, 232-36 (1981); *see Mansell v. Mansell*, 490 U.S. 581, 584 (1989) (explaining that Congress enacted USFSPA in response to *McCarty*).

[13]    *Mansell,* 490 U.S. at 589.

[14]    10 U.S.C. § 1408(a)(4)(ii).

divisible upon divorce. Because disability pay, in contrast to retirement pay, is not taxed,[15] many veterans choose to do so.[16] Gross was receiving nondivisible disability benefits from the VA at the time of his divorce.

In *Mansell v. Mansell* the Supreme Court held that "the [USFSPA] does not grant state courts the power to treat as property divisible upon divorce military retirement pay that has been waived to receive veterans' disability benefits."[17] We applied *Mansell* in *Clauson v. Clauson*, holding that "state courts [do not] have any power . . . to equitably divide veterans' disability benefits received in place of waived retirement pay."[18] But we subsequently held that superior courts are permitted to order indemnification for any reduction caused by a service member in divisible retirement payments to a former spouse, such as a reduction due to voluntary waiver of retirement pay in exchange for disability pay.[19]

Gross argues that the superior court's decision ordering him to pay Wilson a portion of his disability payments was erroneous for three reasons. First, he did not believe he was agreeing to divide his disability payments or indemnify Wilson for a reduction in payments caused by something other than waiving retirement benefits in exchange for disability benefits. Second, the USFSPA precluded the court's division of disability payments in his divorce, and the division of those payments is therefore unenforceable. And third, the superior court was allowed to require indemnification only

---

[15]    26 U.S.C. § 104(a)(4) (2012).

[16]    *See Howell v. Howell*, 137 S. Ct. 1400, 1403 (2017).

[17]    490 U.S. at 594-95.

[18]    831 P.2d 1257, 1262 (Alaska 1992).

[19]    *See Young v. Lowery*, 221 P.3d 1006, 1012-13 (Alaska 2009).

-8-                                                                                    **7262**

for a reduction in Wilson's portion of his retirement pay caused by voluntarily waiving retirement pay in exchange for disability benefits, which he did not do.

Gross does not address the superior court's conclusion that he had no procedural basis under Rule 60(b) for seeking to set aside the settlement agreement. Because we find no legal or factual error or abuse of discretion in the superior court's reasoning on this issue, we affirm the court's enforcement order.

## A. The Superior Court Did Not Abuse Its Discretion By Denying Gross's Cross-Motion To Deny Enforcement.

In a divorce proceeding where marital property has been divided, a divorce decree incorporating a property division constitutes a final judgment.[20] "Other than a Civil Rule 77(k) motion for reconsideration, which must be made within ten days of the court's order, an Alaska Civil Rule 60(b) motion provides the only available means for seeking relief from a final judgment of property division."[21] In this case Gross filed a "cross-motion for order denying enforcement of claim for disability payments," which the superior court treated as a Rule 60(b) motion for relief. Because a Rule 60(b) motion was the only available means for seeking relief from the property division, the superior court was correct in doing so. Rule 60(b) permits relief only for specified reasons:

> (1) mistake, inadvertence, surprise or excusable neglect;
>
> (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;

---

[20] *Williams v. Williams*, 252 P.3d 998, 1005 (Alaska 2011).

[21] *Id.*

-9- **7262**

> (4)     the judgment is void;

> (5)     the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or

> (6)     any other reason justifying relief from the operation of the judgment.

The party seeking relief from the judgment need not specify which of these reasons applies,[22] but the burden of establishing a basis for relief nonetheless falls on the party seeking it.[23]  The request for relief from judgment must be made "within a reasonable time," and if the request is on the basis of subsections (1), (2), or (3) it must be made not more than one year after the date of notice of the judgment.[24]

Gross has made no claim of newly discovered evidence or fraud that would support relief under Rule 60(b)(2) or (3).  And because his cross-motion was filed more than a year after the divorce decree and property division, Gross was also time-barred from seeking relief under Rule 60(b)(1), (2), and (3).  Furthermore, Gross does not indicate any change in circumstances that would make continued enforcement inequitable and justify relief under Rule 60(b)(5).  The remaining two subsections are discussed in more detail below.

---

[22]     *See Clauson v. Clauson*, 831 P.2d 1257, 1259-61 (Alaska 1992) (granting relief to ex-wife under Rule 60(b)(6) though she had cited no statute for her motion to modify a final divorce decree).

[23]     *Erica G. v. Taylor Taxi, Inc.*, 357 P.3d 783, 789 n.19 (Alaska 2015).

[24]     Alaska R. Civ. P. 60(b).

### 1. The property division, even if erroneous, was not void.

Gross argues that the superior court's directive that he pay Wilson a portion of his disability payment was "based on [the erroneous assumption] that Gross's military pension and VA disability benefits could be combined and divided." He contends that under our case law "a court may not equitably divide total retired pay; it may equitably divide only the amount of retired pay remaining after the court deducts waived retired pay and the cost of purchasing survivor benefits."[25] And he argues that "[d]isability benefits should not, in either form or substance, be treated as marital property subject to division upon the dissolution of marriage."[26] Therefore, he asserts that the settlement provision requiring him to pay a portion of his military disability payments to Wilson is unenforceable. In essence Gross argues that the divorce decree was issued in violation of the USFSPA. If Gross is correct, and if as a consequence of this the March 2014 judgment was void, Gross would be entitled to relief under Rule 60(b)(4).

We clarified in *Clauson* that "neither the USFSPA nor prior Supreme Court decisions require [Alaskan] courts to completely ignore the economic consequences of a military retiree's decision to waive retirement pay in order to collect disability pay."[27] Consequently, we held it was proper to consider "the economic consequences of a decision to waive military retirement pay in order to receive disability pay."[28] But we cautioned that, when considering these economic consequences, the superior court may not "simply shift an amount of property equivalent to the waived retirement pay from the

---

[25] *Young v. Lowery*, 221 P.3d 1006, 1011 (Alaska 2009).

[26] *See Guerrero v. Guerrero*, 362 P.3d 432, 440 (Alaska 2015) (quoting *Clauson* 831 P.2d at, 1264).

[27] 831 P.2d at 1263.

[28] *Id.* at 1264; *see also Guerrero*, 362 P.3d at 445 (reaffirming *Clauson*).

military spouse's side of the ledger to the other spouse's side. . . . Disability benefits should not, either in form or substance, be treated as marital property subject to division upon the dissolution of marriage."[29] Unlike this case, the parties in *Clauson* did not agree to divide military disability pay; the "shifting" that we disapproved of in *Clauson* arose entirely from the former spouse filing a motion to amend the decree to include the amount of disability benefits and the trial court granting that motion.[30] However, we do not need to address whether this distinguishes this case from *Clauson*; even if this case falls under our holding in *Clauson* and the trial court's ruling was erroneous, that does not in itself entitle Gross to relief under Rule 60(b)(4).

As we explained in *Blaufuss v. Ball*, "Rule 60(b)(4) permits relief from a void judgment if the issuing court lacked subject matter jurisdiction or violated due process. Void judgments may be attacked at any time."[31] But we also noted that the rule "is not a substitute for a party failing to file a timely appeal; nor does it allow relitigation of issues that have been resolved by the judgment."[32] Simply put, "[a] judgment is not void merely because it is erroneous."[33] Thus, even if the divorce decree was erroneous

---

[29]     *Clauson*, 831 P.2d at 1264; *see also Dunmore v. Dunmore*, ___ P.3d ___, Op. No. 7246 at 572, 2018 WL 2173710, at *3-5 (Alaska May 11, 2018) (discussing a similar issue regarding Social Security benefits).

[30]     *Clauson*, 831 P.2d at 1259-60.

[31]     305 P.3d 281, 285 (Alaska 2013) (quoting *Ray v. Ray*, 115 P.3d 573, 577 (Alaska 2005)).

[32]     *Id.* (quoting *Cook v. Cook*, 249 P.3d 1070, 1083 (Alaska 2011)).

[33]     *Id.* at 286 (alteration in original) (quoting 11 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2862 (3d ed. 2012)); *see also Leisnoi, Inc. v. Merdes & Merdes, P.C.*, 307 P.3d 879, 892 (Alaska 2013) ("[T]he superior court's entry of judgment, while erroneous, did not render the judgment void or divest the court
(continued...)

as a matter of federal law by including payment to Wilson for the amount of Gross's disability benefits, the judgment might have been voidable if properly challenged, but it would not be void absent a lack of subject matter jurisdiction or a violation of due process. Gross has claimed neither, and we find no indication in the record of either.[34] Accordingly, Gross was not entitled to relief under Civil Rule 60(b)(4).

---

[33]       (...continued) of jurisdiction.").

[34]       In *Cline v. Cline*, we stated that "the USFSPA bars state courts from exercising subject matter jurisdiction over more than fifty percent of a recipient's military retirement benefits." 90 P.3d 147, 152 (Alaska 2004). But in *Leisnoi, Inc. v. Merdes & Merdes, P.C.*, we "seriously question[ed] whether *Cline* was correctly decided." 307 P.3d 892. Because the parties' settlement agreement only gave Wilson fifty percent of Gross's retirement and disability benefits, and no more, *Cline* does not directly apply here. Even so, we take this opportunity to address it.

*Cline*'s holding was based on "the same logic" as *Clauson*, which *Cline* understood as "based on our reading of the federal law as stripping state courts of subject matter jurisdiction over those benefits . . . specified in the USFSPA." *Cline*, 90 P.3d at 152. But *Clauson* did not address subject matter jurisdiction; rather, it discussed only whether state courts have the "authority" to divide military benefits consistent with substantive federal law. *Clauson*, 831 P.2d at 1261-62. *Cline* is also inconsistent with our general understanding of subject matter jurisdiction, which we have defined as "the legal authority of a court to hear and decide a particular type of case." *Hawkins v. Attatayuk*, 322 P.3d 891, 894 (Alaska 2014) In short, a court either has subject matter jurisdiction and can hear the case, or it does not and cannot. *Cline*'s suggestion that a state court can hear a divorce case but has subject matter jurisdiction over only some of the relevant assets is an anomaly in our jurisdiction jurisprudence.

A majority of state courts that have addressed the issue treat the USFSPA and *Mansell* as a rule of substantive federal law, and not a jurisdictional matter. *See* BRETT TURNER, 2 EQUITABLE DISTRIBUTION OF PROPERTY § 6:6 & n.21 (3d ed. Nov. 2017 update) (citing cases from California, North Carolina, Pennsylvania, South Carolina, and Virginia). For the reasons discussed here, we adopt this majority rule, and (continued...)

## 2.    Gross is not entitled to relief under Rule 60(b)(6).

Rule 60(b)(6) allows relief from a final judgment for "any other reason justifying relief." As we have explained previously, clause (6) of Rule 60(b) "is reserved for extraordinary circumstances not covered by the preceding clauses."[35] In the divorce context we have found four such circumstances which may justify relief: "(1) the fundamental, underlying assumption of the dissolution agreement has been destroyed; (2) the parties' property division was poorly thought out; (3) the property division was reached without the benefit of counsel; and (4) the property in dispute was the parties' principal asset."[36]

Here, both parties had the assistance of counsel, and the property division was developed over the course of a lengthy mediation process with a former judge and three hearings at which attorneys were present. The disability benefits were also not the parties' principal assets; they had a home, various other civilian and military retirement benefits, and other assets.

However, Gross claims that he "failed to note or apprehend the meaning of the settlement agreement" which required him to pay half of his disability benefits to Wilson and to indemnify her if he took any action to reduce those payments. He asserts that he believed he agreed to pay Wilson one half of his military pension but none of his disability benefits and that paragraph 11 was mistakenly left in the agreement. In

---

[34]    (...continued)
disavow *Cline*'s holding that the USFSPA and *Mansell* affect the subject matter jurisdiction of state courts.

[35]    *Johnson v. Johnson*, 394 P.3d 598, 602 (Alaska 2017) (quoting *O'Link v. O'Link*, 632 P.2d 225, 229 (Alaska 1981)).

[36]    *Guerrero v. Guerrero*, 362 P.3d 432, 444 (Alaska 2015) (quoting Cook, 249 P.3d at 1084).

addition, Gross argues that he believed he was agreeing to indemnify Wilson only if he unilaterally allocated a portion of his disposable retirement pay to disability benefits and that this understanding was entirely consistent with case law in Alaska.[37] If true, this raises the questions whether Gross entered the settlement agreement based on the assumption that his disability benefits would not be divided and whether the inclusion of paragraph 11 destroyed this fundamental assumption.

But the superior court found that there was no confusion or misunderstanding that Gross would pay 50% of his disability benefits — or at least an amount equal to 50% of his disability payments — to Wilson. Our review of the record leads us to conclude that the superior court did not clearly err in these findings.

At the first hearing regarding the settlement agreement in November 2013, Gross's attorney discussed an "aggregate retirement payment, which includes . . . disability." At the same hearing Wilson's attorney explained in detail that it was not just disposable retirement pay that was to be divided, but rather total retirement pay, which would be achieved by having Gross pay directly to Wilson whatever the USCG was unwilling to pay pursuant to its rules. Judge Collins, who had facilitated the parties' mediation, explained that the parties had "agreed to divide the retirement, which includes disability, which is received in lieu of what would have otherwise been retirement, on a 50-50 basis." In addition, Judge Collins specifically stated that if Gross took "*any* action that might reduce what would otherwise be retirement benefits," (emphasis added) he would be responsible for reimbursement to Wilson.

---

[37]     *See id.* (holding that trial courts "may expressly order [a service member] not to reduce his disposable retired pay and require [him] to indemnify [his former spouse] for any amounts by which her payments are reduced below the amount set on the date [an] amended qualified order is entered" (quoting *Young v. Lowery*, 221 P.3d 1006, 1012-13 (Alaska 2009))).

At the December 2013 hearing, Gross's attorney stated that Gross was "prepared to accept the proposed decree" and that the attorney was "prepared to go forward as long as we [the parties] understand that the property settlement, as reached during the mediation — that we're [the parties] not reopening that." Gross was given a chance to respond, at which point he signaled his approval: "I'm good." Finally, at the March 2014 hearing, Gross affirmed that he had read the settlement agreement carefully, was satisfied with it, had signed it, and had agreed to it of his own free will.

In these circumstances the superior court did not clearly err in finding that Gross's claims of surprise were "both hard to accept and inconsistent with the settlement agreement," with affirmations by the parties, and with clear statements by both counsel and Judge Collins; and the court's finding that Gross was well aware of the contents of paragraph 11 is well supported by the record. We conclude the superior court did not clearly err in finding that Gross agreed to and understood the settlement agreement's requirements that he pay a portion of his disability benefits to Wilson and that he indemnify her if he caused her share of his payments from the military to be reduced for any reason. The record also clearly shows that, at the time of the divorce proceedings, Gross was already aware that military disability benefits are normally not divisible. Thus, there is no indication that any fundamental assumption underlying the settlement agreement was destroyed: Gross was aware that he was agreeing to give Wilson an amount equal to a portion of his disability benefits and that he was giving up non-divisible property by doing so. The broad catch-all provision of Rule 60(b)(6) "is not for the purpose of relieving a party from free, calculated, and deliberate choices he has made."[38]

---

[38] *Id.* at 444 (quoting *Sandberg v. Sandberg*, 322 P.3d 879, 889 (Alaska 2014)).

In short, Gross has asserted no valid basis under Rule 60(b) for bringing a collateral attack on the property division more than a year after he voluntarily agreed to it. In light of the evidence in the record and the superior court's factual findings, we find no abuse of discretion in the court's decision to deny Gross's request for relief from the property division in the divorce decree.

**B.     The Superior Court Did Not Impermissibly Order Gross To Indemnify Wilson.**

Gross argues that the superior court erred by requiring him to "indemnify Wilson by making him pay a portion of his VA disability payments to Wilson." He argues that such an indemnification can be ordered only when a service member reduces the amount of divisible retirement pay by voluntarily waiving divisible retirement pay in exchange for nondivisible disability pay. He asserts that because he has not done so requiring indemnification payments to Wilson based on his disability pay constitutes an illegal division of disability benefits.

We have previously held that the superior court is permitted to order indemnification when a veteran causes a reduction in a former spouse's share of divisible retirement pay after divorce.[39] Although our decisions focused on a reduction caused by a waiver of retirement pay, they authorized indemnification for a reduction caused by any action taken by a veteran spouse. In *Young v. Lowery* we held that the superior court "may . . . require [a service member] to indemnify [a former spouse] for any amounts by which . . . payments are reduced below the amount set on the date [an] amended qualified

---

[39]     *See Young v. Lowery*, 221 P.3d 1006, 1012-13 (Alaska 2009); *Glover v. Ranney*, 314 P.3d 535 (Alaska 2013), *abrogated by Howell v. Howell*, 137 S. Ct. 1400 (2017).

order is entered."[40]  In explaining that indemnification would be appropriate in that context, we stated that "[b]ecause [the former spouse] receives a proportional share of [the service member's] disposable retired pay, any reduction in the amount of total disposable retired pay — occasioned, *for example*, by an increase in [the service member's] disability pay requiring additional waiver of retired pay — would cause a decrease in [the former spouse's] monthly payment."[41]

However, during the pendency of this appeal, the Supreme Court in *Howell v. Howell* foreclosed the ability of state courts to order a veteran to indemnify a former spouse for a reduction in retirement pay caused by a post-divorce waiver of retirement pay in exchange for disability benefits, the specific example we endorsed in *Young*.[42]  In *Howell* a veteran and his wife divorced while he was serving in the U.S. Air Force.[43] Anticipating his eventual retirement, and consistent with the parties' settlement agreement, the divorce decree awarded the wife half of the veteran's future military retirement pay.[44]  The veteran retired a year later, and half of his retirement pay went to

---

[40]    221 P.3d at 1012-13.

[41]    *Id.* at 1012 (emphasis added).  We applied this principle in *Glover v. Ranney*, where "[t]he indemnification clause in the superior court's order require[d] damages if [the service member] reduce[d] [the former spouse's] share of retirement benefits." *Glover*, 314 P.3d at 543.  We stated that the "clause does exactly what we envisioned in *Young v. Lowery*. . . .  Rather than improperly dividing waived benefits, the order . . . require[s] [the service member] to indemnify [the former spouse] for *any* subsequent unilateral actions to decrease the total monthly pension payout amounts." *Id.* (emphasis added).

[42]    *Howell*, 137 S. Ct. at 1404-06.

[43]    *Id.* at 1404.

[44]    *In re Marriage of Howell*, 361 P.3d 936, 937 (Ariz. 2015).

-18-                    7262

his ex-wife.[45] Thirteen years later he qualified for and elected to receive disability benefits, which required him to waive a portion of the retirement pay he shared with his former spouse, thereby reducing the amount she received each month.[46] The former spouse asked the Arizona family court to enforce the original decree and restore the value of her share of retirement pay.[47] The family court did so, and the Supreme Court of Arizona affirmed, reasoning that *Mansell* did not control because the veteran made his waiver after, rather than before, the divorce and because the family court simply ordered the veteran to "reimburse" his former spouse for the reduction of her share of military retirement pay.[48]

The Supreme Court reversed, reasoning that the reimbursement award at issue was still a "portion of military retirement pay that [the service member] waived in order to obtain disability benefits"[49] and that a state court could not "avoid *Mansell* by describing the family court order as an order requiring [the veteran] to 'reimburse' or to 'indemnify' [a former spouse], rather than an order that divides property."[50] It noted that the temporal difference relied on by the Arizona Supreme Court "highlight[ed] only that [the veteran's] military retirement pay at the time it came to [his former spouse] was subject to later reduction" and that "[t]he state court did not extinguish (and most likely

---

[45]     *Howell*, 137 S. Ct. at 1404.

[46]     *Id.*

[47]     *Id.*

[48]     *Id.*

[49]     *Id.* at 1405-06.

[50]     *Id.* at 1406.

would not have had the legal power to extinguish) that future contingency."[51] The Supreme Court concluded: "Regardless of their form, such reimbursement and indemnification orders displace the federal rule and stand as an obstacle to the accomplishment and execution of the purposes and objectives of Congress. All such orders are thus pre-empted."[52] This holding abrogates our decisions to the extent they authorize indemnification for reductions in a former spouse's share of retirement payments caused by a veteran's post-divorce waiver.[53]

Both *Young* and *Howell* involved court orders requiring a service member to reimburse a former spouse for actions that reduced the amount of retirement pay the former spouse was entitled to; under *Howell*, such an order violates federal law. But that is not what happened in this case. Gross did not make a post-divorce waiver that reduced retirement pay to receive disability pay; he simply stopped paying Wilson the amount she was entitled to pursuant to the property division. As explained above, Gross has not asserted any valid basis for relief from the judgment effectuating the parties' property division. Thus, although Gross unilaterally reduced the amount of his payments to Wilson, the amount she was entitled to never changed. And although the superior court considered the effect of the indemnity provision in the settlement agreement, it did not order Gross to "indemnify" Wilson. Rather, the court ordered Gross to "resume monthly payments" to Wilson "as ordered by the court on March 11, 2014, and as agreed by the

---

[51] *Id.* at 1405.

[52] *Id.* at 1406.

[53] However, we note that under *Howell*, "a family court, when it first determines the value of a family's assets, remains free to take account of the contingency that some military retirement pay might be waived, or . . . take account of reductions in value when it calculates or recalculates the need for spousal support." *Id.*

parties pursuant to [the] settlement agreement," and it ordered the parties to submit pleadings to establish the amount of "arrearages" owed to Wilson.

Under *Howell* a state court may not circumvent *Mansell* by ordering a service member to "indemnify" a former spouse for retirement benefits waived to receive disability pay. But *Howell* does not hold that a state court cannot enforce a property division by ordering a service member who unilaterally stops making payments the service member was legally obligated to make to resume those payments and pay arrearages.

## V. CONCLUSION

We AFFIRM the superior court's order enforcing the settlement agreement's division of Gross's disability benefits.