*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| ANDREA BLAUFUSS, | ) | |
| | ) | Supreme Court No. S-14484 |
| Appellant, | ) | |
| | ) | Superior Court No. 3KO-06-00285 CI |
| v. | ) | |
| | ) | O P I N I O N |
| MELVIN BALL, | ) | |
| | ) | No. 6796 - July 12, 2013 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Kodiak, Steve W. Cole, Judge.

Appearances: Andrea Blaufuss, pro se, Bellevue, Washington, Appellant. Jürgen Jensen, The Law Office of Jürgen Jensen, Anchorage, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, and Maassen, Justices. [Bolger, Justice, not participating.]

WINFREE, Justice.

I.     INTRODUCTION

After a trial the superior court granted a decree of divorce, distributed marital debts and property, and ordered the husband to pay spousal support for an indefinite time period. More than three years later — in front of a different superior court judge — the wife sought relief for the husband's failure to pay any spousal support. The husband in turn filed a motion to set aside the original spousal support award,

arguing the judgment was void: (1) for lack of personal and subject matter jurisdiction at the trial; and (2) because he had not received due process during the trial. The superior court granted the husband's motion, declaring the spousal support judgment void because the husband had not received due process during the trial. The wife appeals; we reverse.

## II.    FACTS AND PROCEEDINGS

Melvin Ball and Andrea Blaufuss (f/k/a Andrea Ball) were married in Washington in 1980. Ball left Blaufuss and moved to Alaska in 2002, but he continued to support Blaufuss and their minor child until 2006. In October 2006 Ball filed for divorce in Alaska. The trial court issued a domestic relations pretrial order listing the documentation requirements for spousal support motions — the order explained that "[a]ll motions and oppositions involving spousal support must be accompanied by a financial declaration affidavit." This order was served on Blaufuss.

Blaufuss did not timely respond to the divorce complaint, and in March 2007 Ball filed a default application. In April Blaufuss's sister, Kathie Price, emailed the superior court a response explaining that Blaufuss: (1) suffered from mental illness and her condition had been deteriorating; (2) was classified as categorically needy by Washington state; (3) was dependent on Ball as her sole source of income; (4) was in arrears for six months on her mobile home lot space fees; (5) owed more than $4,000 in property taxes on her mobile home; (6) had no money to pay her electric bill; (7) had a broken furnace and had been heating her home using the oven; and (8) had moved in with Price. Price requested spousal support for Blaufuss. Blaufuss signed a note authorizing Price's response.

The trial court accepted the email as Blaufuss's answer, denied Ball's default request, and scheduled a trial-setting conference. After that conference the court issued an order explaining that divorce, spousal support, and property and debt would

be addressed at trial. Trial took place in June 2007. Ball, Blaufuss, and Price appeared telephonically.

Ball testified that he sent Blaufuss money after he moved to Alaska in 2002, but stopped supporting her in November 2006 because he "found out about her use of cocaine and spending the money on . . . drugs and [that] she also was . . . being unfaithful." Ball testified that he had earned approximately $94,000 a year, but that his income recently had dropped to approximately $54,000 a year. When asked about Blaufuss's assertion that she "suffers from mental illness, severe depression and anxiety disorders and is not able to care for herself," Ball testified that Blaufuss was

> fine as long as she doesn't take a lot of drugs. She had a job, she was holding a job until she started using narcotics, painkillers, and mixing them with antidepressants. She'd been through rehab, been through a program to get cleaned up a couple of times, and she finally ended up resorting to illegal street drugs. . . . I know that she can - she would be able to hold a job.

Ball also asserted that between 2002 and 2006 he had provided for Blaufuss by depositing more than $20,000 into Price's bank account, but that he did not want to pay further spousal support because he did not "feel that [he] should have to take care of her because of her problems that . . . obviously she's born with."

After Ball testified, the court requested Blaufuss's testimony. Price responded, explaining that she did not know if her sister was in an emotional condition to testify and offered to "answer any questions that [the court] would have." The court voir dired Price and then Blaufuss.

Price testified that Blaufuss and Ball owed property taxes and space fees on their mobile home and that they had incurred a $1,700 cellular telephone debt in Price's name. Price explained that Blaufuss "suffers from mental illness, severe depression and anxiety disorders." When the court asked if Blaufuss's mental illness

was documented, Price responded "I have numerous pieces of documentation," but none were produced at trial. Price testified that ten years earlier Blaufuss had worked for less than a year but had not been emotionally stable enough to continue working. Price further explained that Blaufuss lived with her and that she administered Blaufuss's medication and kept drugs and alcohol out of the home. Finally, Price testified about her expenses incurred in caring for Blaufuss and the amount of state assistance Blaufuss received.

The court again requested Blaufuss's testimony. Blaufuss stated that she agreed with her sister's testimony. Blaufuss added that she had not used cocaine for almost a year.

Later that month the trial court issued findings and a decree of divorce. The court found that Blaufuss suffered from mental illness and had chronic substance abuse problems, was unemployable, and needed supervision and assistance. The court awarded Blaufuss $1,000 monthly, indefinitely, for spousal support. The trial court also awarded Blaufuss the mobile home and the property tax liability, and ordered Ball to pay unpaid mobile home space fees and $1,700 to Price for the cellular telephone debt.

In January 2010, having received no spousal support payments, Blaufuss moved to find Ball in contempt. On November 14, 2010, Superior Court Judge Steve W. Cole, who had not been the divorce trial judge, scheduled a December 2010 hearing. The hearing was continued, and on December 30 Ball filed an Alaska Civil Rule 60(b)(4) motion[1] alleging that at the time of the original divorce the superior court: (1) lacked personal jurisdiction over Blaufuss because she was not an Alaska resident; (2) did not

_____

[1]    Alaska R. Civ. P. 60(b)(4) provides: "On motion and upon such terms as are just, the court may relieve a party . . . from a final judgment, order, or proceeding [if] . . . the judgment is void."

have subject matter jurisdiction over property outside of Alaska to address the mobile home debt; and (3) did not have jurisdiction to address Price's $1,700 claim because Price "never submitted herself to the personal jurisdiction of the court." Ball also alleged that he had not received due process during the divorce trial because: (1) the court ordered spousal support with no financial documentation and relied on hearsay testimony from Price; (2) Blaufuss provided no evidence supporting her allegations; (3) the court required no documentation supporting Blaufuss's medical claims; and (4) the court ignored Ball's testimony even though Blaufuss's testimony was inconsistent.

Blaufuss responded, arguing that: (1) the court had subject matter jurisdiction under AS 25.24.010;[2] (2) Ball subjected himself to the court's personal jurisdiction by filing his original divorce complaint; (3) the court had personal jurisdiction over Blaufuss after she voluntarily participated in the divorce trial and waived lack of personal jurisdiction as a defense; and (4) Ball was estopped from arguing the court lacked jurisdiction because he had invoked the court's jurisdicition. Blaufuss also argued that Ball had received a fair hearing and due process because Ball: (1) instituted the action and had notice of the trial; (2) had been notified by Blaufuss's email answer to the divorce complaint and the court's scheduling order of the issues the court planned to address at trial; (3) had the opportunity to be heard, and actually testified at trial, about Blaufuss's mental illness and the couple's debts; and (4) did not appeal — the proper avenue for redress when disagreeing with a judgment.

In August 2011 Judge Cole granted Ball's Rule 60(b)(4) motion in part, vacating the spousal support award. Judge Cole rejected Ball's jurisdictional arguments, explaining that at the time of the original divorce action the court had subject matter

---

**2**    AS 25.24.010 provides: "A husband or wife may maintain an action against the other for divorce or to have the marriage declared void."

jurisdiction, Blaufuss had waived any personal jurisdiction claims, and Ball was estopped from arguing against jurisdiction four years after he had invoked the court's jurisdiction and received a judgment. But Judge Cole agreed with Ball's due process argument as to spousal support. Judge Cole was concerned that there was no documentation or expert testimony regarding Blaufuss's mental health and ability to support herself, that there was no financial documentation despite a court order requiring disclosures,[3] and that the original decision relied on Price's hearsay testimony. He determined that expert testimony and mental health documentation, financial documentation, and Blaufuss's own testimony would have had immense value because grants of permanent spousal support require "substantial evidence" that a spouse is not employable and may only be awarded when "just and necessary." Finally, he concluded that while Ball received an opportunity to be heard and challenge evidence, "[d]ue process dictates that testimony beyond the lay testimony presented in these original proceedings [is available] before making a determination of Ms. Blaufuss's mental state, her prospect of future employment and whether an award of alimony was just and necessary."

Blaufuss appeals pro se, arguing that the superior court erred by granting Ball's Rule 60(b)(4) motion and vacating the spousal support award.

## III.    STANDARD OF REVIEW

We review the superior court's decision on a Rule 60(b)(4) motion de novo "because the validity of a judgment is strictly a question of law."[4] When considering due

---

[3]        Judge Cole presumably was referring to the domestic relations pretrial order issued at the beginning of the case requiring financial declarations to accompany spousal-support *motions and oppositions*. Blaufuss apparently did not file a motion for interim spousal support, leaving the matter for trial. It is not at all clear that an order for financial declarations in connection with spousal support was violated by either party.

[4]        *Lesnoi, Inc. v. Merdes & Merdes, P.C.*, __ P.3d __, 2013 WL 386373, at (continued...)

process questions we adopt "the rule of law that is most persuasive in light of precedent, reason, and policy."[5]

## IV.  DISCUSSION

Alaska Statute 25.24.160 provides the superior court discretion to award spousal support after considering enumerated factors.[6] Alaska Statute 25.24.170 clarifies that spousal support awards may be modified at any time after final judgment.[7] Generally, modification of a support order is warranted only after a party shows a material and substantial change in circumstances.[8] But Ball did not request a spousal

---

[4]    (...continued)
*4 (Alaska, Feb. 1, 2013) (quoting *Aguchak v. Montgomery Ward Co.*, 520 P.2d 1352, 1354 (Alaska 1974)).

[5]    *In re Estate of Fields*, 219 P.3d 995, 1003 (Alaska 2009) (quoting *S.B. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 61 P.3d 6, 10 (Alaska 2002)).

[6]    AS 25.24.160 provides:  "In a judgment in an action for divorce . . . the court may provide . . . for the recovery by one party from the other of an amount of money for maintenance, for a limited or indefinite period of time, . . . an award of maintenance must fairly allocate the economic effect of divorce . . . ." *See Hanlon v. Hanlon*, 871 P.2d 229, 232-33 (Alaska 1994) ("Permanent awards of spousal support are particularly disfavored, 'because it is generally undesirable to require one person to support another on a long-term basis in the absence of an existing legal relationship.' " (quoting *Jones v. Jones*, 835 P.2d 1173, 1179 (Alaska 1992))).

[7]    AS 25.24.170 provides:  "any time after judgment the court, upon the motion of either party, may set aside, alter, or modify so much of the judgment as may provide for alimony . . . or for the maintenance of either party to action."

[8]    *Burrell v. Burrell*, 696 P.2d 157, 161 (Alaska 1984).  We have not yet decided whether spousal support may be retroactively modified, but we recently noted that although not barred by statute in Alaska, retroactive modification is not allowed in the majority of states. *Wirtz v. Wirtz*, Mem. Op. & J. No. 1360, 2010 WL 1135765, at
(continued...)

support modification; rather, he relied on Rule 60(b)(4) and argued that the 2007 spousal support order was void.

"Rule 60(b)(4) permits relief from a void judgment if the issuing court lacked subject matter jurisdiction or violated due process. Void judgments may be attacked at any time."[9] But the rule "is not a substitute for a party failing to file a timely appeal; nor does it allow relitigation of issues that have been resolved by the judgment."[10] Further, "[a] judgment is not void merely because it is erroneous."[11]

Judge Cole's decision to vacate the spousal support order relied on his determination that the divorce trial proceedings violated Ball's due process rights. We have explained that "[t]he right to due process is violated if a party is deprived of 'the opportunity to be heard at a meaningful time and in a meaningful manner.' "[12] Due process "expresses a basic concept of justice."[13] Determining the process due to an individual is a case-by-case inquiry based on the interest implicated — the interest being

_____

[8]    (...continued)
*14 n.48 (Alaska, Mar. 24, 2010).

[9]    *Ray v. Ray*, 115 P.3d 573, 577 (Alaska 2005) (citing *State v. Maxwell*, 6 P.3d 733, 736 (Alaska 2000); *Dewey v. Dewey*, 969 P.2d 1154, 1159-60 (Alaska 1999)).

[10]    *Cook v. Cook*, 249 P.3d 1070, 1083 (Alaska 2011) (quoting *Morris v. Morris*, 908 P.2d 425, 429 (Alaska 1995)).

[11]    11 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 2862 (3d ed. 2012).

[12]    *Heustess v. Kelley-Heustess*, 259 P.3d 462, 477 (Alaska 2011) (quoting *Matson v. State, Commercial Fisheries Entry Comm'n*, 785 P.2d 1200, 1206 (Alaska 1990)).

[13]    *State, Dep't of Natural Res. v. Greenpeace, Inc.*, 96 P.3d 1056, 1063 (Alaska 2004) (citing *Green v. State*, 462 P.2d 994, 996-97 (Alaska 1969)).

deprived — by state action.[14] The process due is not solely dependent on the deprived interest but rather "depends on the 'appropriate accommodation of the competing interests involved.' "[15]

> Three distinct factors are balanced in our due process analysis:
>
> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.[16]

Blaufuss contends that Judge Cole erred by granting the Rule 60(b)(4) motion and vacating the spousal support award because Ball received "a fair and adequate hearing." She argues that Ball received a full evidentiary hearing and that he "was allowed to introduce evidence, give testimony and to cross-examine witnesses. He was given advance notice of the issues to be decided." She asserts that Judge Cole erroneously "analyzed the quality of the presentations by Mr. Ball and Ms. Blaufuss at [the] hearing," instead of reviewing the adequacy of the notice and hearing Ball received. Blaufuss further asserts that Judge Cole's decision was based on alleged judicial error such as insufficient evidence, and that Ball failed to show any due process violation. She argues that judicial error must be addressed on appeal and that a Rule 60(b) motion is not a substitute for an appeal.

---

[14] *See id.* at 1065 (citing *Fuentes v. Shevin*, 407 U.S. 67, 92 n.22 (1972); *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976)).

[15] *Borkowski v. Snowden*, 665 P.2d 22, 27 (Alaska 1983) (quoting *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 434 (1982)).

[16] *Id.* at 27-28 (citing *Mathews*, 424 U.S. at 335).

Ball responds that his Rule 60(b)(4) motion was a proper avenue for relief because it challenged the sufficiency of process he received in 2007. Ball contends that he had inadequate notice before the 2007 trial because there had been no discovery, no pretrial pleadings, no financial disclosures by either party despite a court order,[17] and no pretrial disclosure of Blaufuss's arguments regarding her mental health diagnoses. Ball also applies the three-part due process balancing analysis and argues that: (1) his interest is substantial; (2) the divorce trial court's decision to rely on lay testimony without financial documentation or additional evidence of Blaufuss's alleged mental illness created a high risk of erroneous deprivation; and (3) the government's interest is limited because "[t]here would be no extra burden on the government to re-hear the issue of alimony." Finally, Ball argues that his due process rights were violated because "findings [were] based on lay testimony by Mr. Ball and Ms. Price without notice of the evidence to be presented, any documentary evidence at trial or any reliable testimony from one party to the case."

We agree with Blaufuss. There can be no dispute that Ball had notice that spousal support would be addressed at trial because: (1) he received Price's 2007 email response that Blaufuss's mental state and indigence would be relied upon for an award of spousal support; and (2) the pretrial order explicitly included spousal support as an issue for trial. Ball nonetheless argues that he received inadequate notice because: (1) both parties ignored the trial court's order to file financial declaration affidavits;[18] and (2) he was not informed of specific medical diagnoses that would be raised at trial. Ball argues that the lack of this information deprived him of the right to adequately represent his interests at trial.

---

[17]     *Cf.* note 3, *supra*.

[18]     *Cf.* note 3, *supra*.

But Ball does not assert that the trial court somehow prevented him from discovering the financial information or Blaufuss's medical diagnoses. Ball's argument implies that a party who fails to prepare for trial, despite knowing the issues to be tried, somehow has inadequate notice for due process purposes.[19] Despite knowing the spousal support issue would be resolved at the trial, Ball failed to conduct any discovery or to gather and present evidence on the issue beyond his own testimony (which tended to support Blaufuss's position). Ball now complains that his due process notice rights were violated in part because he did not have Blaufuss's financial or medical information for trial. Ball provides no support for this expansive interpretation of the due process notice requirement. Ball cites *Aguchak v. Montgomery Ward Co.*,[20] in which we decided due process required that the defendants in that case receive notice of their right to file written pleadings in response to civil complaints.[21] *Aguchak* did not address notice of specific issues and arguments to be presented at trial and does not support Ball's expansive due process interpretation.

Ball also misapplies the three-part due process balancing test, repeating Judge Cole's analysis and arguing that: (1) his interest in not paying spousal support is significant; (2) the trial court ran a high risk of erroneous deprivation; and (3) the state has a minimal interest here and additional safeguards would impose no burden. But the

---

[19]    *Cf. VinZant v. Elam*, 977 P.2d 84, 86-87 (Alaska 1999) (deciding due process requires notice of issues to be addressed and decided at trial); *A.M. v. State*, 945 P.2d 296, 302 (Alaska 1997) ("Notice reasonably calculated to afford the parties an opportunity to present objections to a proceeding, and affording them a reasonable time do so, is a fundamental requirement of due process." (quoting *Kerr v. Kerr*, 779 P.2d 341, 342 (Alaska 1989))).

[20]    520 P.2d 1352 (Alaska 1974).

[21]    *Id.* at 1357-58.

purpose of the three-part due process analysis is to determine the sufficiency of the procedures provided when there is a deprivation of a protected interest.[22] Judge Cole's conclusion that there was a high risk of erroneous deprivation was based entirely on the sufficiency of the evidence presented to the trial court, not the sufficiency of the procedures provided before or during trial. Judge Cole looked at the limited evidence Ball and Blaufuss presented to support their trial arguments and concluded that there had been insufficient evidence presented at trial to support a spousal support award. This conclusion does not implicate the process Ball received, but rather implicates alleged decisional error by the trial court. And the correct procedure to remedy such an error is a direct appeal to this court.

Ball received notice and the opportunity to gather and present evidence at trial. The trial court did not prevent Ball from conducting discovery, testifying, cross-examining other witnesses, or presenting his own expert testimony. Nor did Ball unsuccessfully object to any trial procedures the trial court employed. Ball only belatedly challenged the evidence presented at trial and the final decision rendered by the trial court, essentially using his Rule 60(b)(4) motion as an original appeal. But his remedy after trial was a timely appeal to this court, and his Rule 60(b)(4) due process argument — an attempt for another bite at the apple after he failed to timely appeal — must be rejected.

## V.    CONCLUSION

We REVERSE and REMAND for further proceedings consistent with this decision.

---

[22]    ERWIN CHEMERINSKY, CONSTITUTIONAL LAW: PRINCIPLES & POLICIES 594 (4th ed. 2011). *See Bigley v. Alaska Psychiatric Inst.*, 208 P.3d 168, 181 (Alaska 2009) ("Alaska has adopted the U.S. Supreme Court's three-part balancing test from *Mathews v. Eldridge* for determining the necessary extent of due process." (footnote omitted)).