*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| JETT M. MILLION, | ) | |
| | ) | Supreme Court No. S-19094 |
| Appellant, | ) | |
| | ) | Superior Court No. 3KO-22-00198 CI |
| v. | ) | |
| | ) | O P I N I O N |
| DIANE L. HUBERT, | ) | |
| | ) | No. 7802 – February 20, 2026 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Kodiak, Stephen B. Wallace, Judge.

Appearances: Jett M. Million, pro se, Kodiak, Appellant. Diane L. Hubert, pro se, Kodiak, Appellee.

Before: Carney, Chief Justice, and Borghesan, Henderson, Pate, and Oravec, Justices.

PATE, Justice.

## I.     INTRODUCTION

State courts can generally treat military retirement as marital property by dividing it in a divorce or dissolution. But federal law bars state courts from treating military disability as marital property; thus, military disability generally cannot be divided in a dissolution. This case asks whether a dissolution decree, which was incorporated into a settlement agreement, that divided veterans' disability and Combat-

Related Special Compensation (CRSC) pay can be collaterally attacked more than a year after it was issued.

A veteran, acting as his own lawyer in dissolution proceedings, represented to the superior court that he had agreed to equally divide his military benefits with his spouse. The veteran informed the court that the monthly payments he received from the government were "retirement benefits," when in fact the benefits were CRSC. Both the veteran and his spouse explained their understanding of the terms of the agreement and expressly consented to those terms. The court accepted the agreement and incorporated it into a decree for the dissolution of marriage.

The veteran was aware, either at the time of the dissolution or shortly thereafter, that the benefits were CRSC. Over a year after the court issued the decree, the veteran learned from military officials that under federal law his benefit payments should not have been divisible in the dissolution. The veteran subsequently filed several motions with the superior court, arguing that the division of his military disability was unenforceable as a matter of federal law. The court rejected the arguments, finding that he had consented to the division. And it held in the alternative that the veteran had waited too long to seek relief from the decree, federal law notwithstanding.

The veteran appeals, raising some of the same arguments he made to the superior court, as well as several new ones. Additionally, he challenges the court's handling of an ancillary dispute over a mortgage on the former marital home.

We affirm the judgment of the superior court.

## II. FACTS AND PROCEEDINGS
### A. Dissolution And Custody Proceedings

Jett Mitchell Million was active duty in the United States Coast Guard when he married Diane Lynn Hubert in 2009. Their child was born the next year. They later purchased a home. Million retired from the Coast Guard in 2019.

In 2022 Million and Hubert petitioned for dissolution of their marriage. They reached a property division agreement which was set out in writing in the petition.

Although both Hubert and Million consulted an attorney during negotiation of the agreement, both parties appeared without attorneys at the dissolution hearing.

At the time of the dissolution Million was receiving monthly payments of $637 from the Coast Guard, which were clearly identified as "retirement benefits" in the petition. The petition represented that the parties had attached an agreement "about the distribution of retirement or military pension benefits." Although there was no attachment, the petition form included a box that the parties could check if they did not plan to divide the retirement benefits listed in the petition. The box was not checked. Million and Hubert also agreed to the division of their other assets, with Hubert receiving the marital home.[1] The petition also included a child custody and support agreement for their child.

A superior court master held a hearing on the petition in August. At the hearing the master asked the parties under oath whether the dissolution petition constituted their entire agreement, and they confirmed that it was the entire agreement. The master also asked whether the agreement was made "freely and voluntarily," to which Million answered, "Yes." The master explained that he could preside over the hearing only if there were "no points of dispute." Neither party indicated there were any points of dispute.

When asked whether the parties planned to obtain a qualified domestic relations order (QDRO)[2] for Million's Coast Guard retirement benefits, Hubert responded that they did not have plans to get a QDRO and that Million "agreed to pay [Hubert] half of his retirement" through a mobile payment service at the beginning of

---

[1]     The parties valued the home at $440,000. There was an outstanding mortgage of the same amount on the home when Million and Hubert filed the petition.

[2]     A QDRO "simply enforces a court order calling for division of retirement benefits." *Thomson v. Thomson*, 394 P.3d 604, 608 (Alaska 2017) (quoting *Zito v. Zito*, 969 P.2d 1144, 1146 (Alaska 1998)).

each month.  Million did not disagree with Hubert's characterization of the benefits or her description of the manner in which payments would be made.

As the hearing wrapped up, the master confirmed that each party "[believed] that the division of the marital estate [was] fair," and Million said, "Yes." The master then confirmed that Million's ongoing financial obligations would include "monthly child support" and "half the Coast Guard retirement."

The master prepared a report for the superior court that accurately reflected the agreement, including a statement that Million would "directly pay" Hubert "half of his monthly coast guard retirement, which is $318.50."  The report recommended a determination that the agreement "fairly allocate[d] the economic effect of dissolution."  The master also found that Million and Hubert had made all agreements required by statute, that "their written agreements constitute the entire agreement between them," that "each spouse entered the agreements voluntarily and free from the coercion of another person," and that "both petitioners fully [understood] the nature and consequences of the action."  The superior court signed the dissolution decree incorporating the parties' agreement for division of the marital estate and issued its final judgment on August 15, 2022.

Million subsequently made child support and "retirement" payments to Hubert through the remainder of 2022 and into 2023.  A few months after the dissolution hearing, Million began labeling his payments to Hubert as both "retirement" and "disability pay."  For example, he labeled payment summaries from October and December 2022 as "Disability Pay."  Million labeled most of the payments as disability through October 2023.

In February 2023 Million moved to modify child custody, support, and visitation.  At an evidentiary hearing held to resolve the child custody motion and another pending motion, Million stated his belief that the military benefits he was sharing with Hubert were "spousal maintenance," and he suggested that because Hubert had since remarried, she might no longer be entitled to the payments.

The superior court resolved both motions in a written order. In part, the court explained that the military benefits Million agreed to share were not spousal maintenance and that a "divisible marital property interest exist[ed] in [Million's] United States Coast Guard retirement earned during the 10 year marriage," and "[Hubert was] entitled to her 1/2 share of the martial interest in the retirement to be paid with the entry of a [QDRO]." The court ordered Million to submit a QDRO by November 1.

## B.    The Coast Guard Benefits

Million contacted the Coast Guard in late 2023 seeking a QDRO. In November a Coast Guard official notified Million that the entirety of his military retirement was offset with benefits from the U.S. Department of Veterans Affairs (VA). "Consequently, there is no Coast Guard retired pay to divide," the official wrote. Further, the official noted that Million's benefits included CRSC, "which is not divisible in a divorce."[3] In a subsequent email, the official confirmed that the Coast Guard could not issue a QDRO for CRSC payments to Hubert.

In December Million filed a motion asking the superior court to credit all of his past military benefit payments to Hubert against his outstanding child support obligations. He asserted that the payments he received from the Coast Guard were not retirement benefits and that none of the benefits he received were divisible as marital

---

[3]    The Uniformed Services Former Spouses' Protection Act (USFSPA) and United States Supreme Court precedent prohibit state courts from dividing military disability and CRSC pay in a divorce or dissolution action. *See* 10 U.S.C. § 1408; *Randolph v. Sheehy*, 882 S.E.2d 19, 25 (Va. App. 2023) (noting that federal law "preempts a state court from ordering a retired veteran to compensate a former spouse for [CRSC payments]"); *Colafrancesco v. Colafrancesco*, 359 So. 3d 1137, 1143 (Ala. Civ. App. 2022) (holding that "CRSC benefits cannot be . . . subject to division as a marital asset"); *see also Howell v. Howell*, 581 U.S. 214, 220 (2017) (noting that "federal law completely pre-empts the States from treating waived military retirement pay as divisible community property" (citing *Mansell v. Mansell*, 490 U.S. 581, 594-95 (1989))).

property. On January 31, 2024, the superior court issued an order denying Million's motion. The court found that Million had signed the dissolution petition voluntarily and that the court was obligated to enforce the property division agreement in the petition as a contract between the parties. In the alternative, the court held that Million's request for relief from judgment of the dissolution decree was untimely under Alaska Civil Rule 60(b) because it had been more than a year since the decree was entered.

Million did not timely seek reconsideration of this order. Instead, in March he again challenged the enforceability of the agreement. Soon afterward Hubert sought to enforce the order. In his opposition Million again claimed that federal law prohibited Hubert from receiving any of his military benefits.

On April 4 the superior court granted Hubert's request to enforce the division of Million's military benefits. The court reiterated that Million had voluntarily entered the property division agreement — a contract — and had agreed to give Hubert half of his Coast Guard benefits. The court noted that "even if the divorce decree was erroneous as a matter of federal law," Million had waived this argument by failing to seek reconsideration or appeal of the January 31 order.

Despite the court's repeated rulings, Million continued to challenge his payment obligations through April and May. Million also adopted new arguments during this period.[4] The superior court declined to revisit the issue and directed Million

---

[4] For example, he alleged that he had agreed to split his military benefits with Hubert during the dissolution because he was aware that she would not qualify for any of his retirement given that there was not a ten-year overlap of the marriage and his Coast Guard service. 10 U.S.C. § 1408(d)(2) (prohibiting retirement payments if spouse "was not married to the member for a period of 10 years or more during which the member performed at least 10 years of service"). Million further claimed that he "never saw" the version of the petition that was filed with the court. He also implied that an attorney separately retained by Hubert had fraudulently doctored the petition after he signed it.

to its prior orders upholding the enforceability of the parties' property division agreement.

### C.    The Mortgage Dispute

As the dispute over Million's benefits unfolded, so too did a disagreement over the mortgage on the former marital home. The property division agreement provided that Hubert would receive the marital home and that Million would execute a quitclaim deed to Hubert. At the dissolution hearing, Hubert noted that both parties' names were on the mortgage, and she acknowledged that Million's name would need to be removed. However, as the superior court later explained, the parties' agreement did not specify any deadlines or obligations for executing the documents necessary to remove Million's name from the mortgage. Million executed a quitclaim deed conveying his interest in the property to Hubert in July 2023. A year after the dissolution hearing, Million's name remained on the mortgage.

Million explained that the delay was impacting his ability to purchase a home. In September the court noted that Hubert was "currently undertaking the refinancing of the home," and it ordered her to "expeditiously complete the refinancing process."

At a hearing in December, Hubert asserted that she could not qualify to independently assume the mortgage because Million had not been making timely child support payments. Hubert explained that because she could not qualify, her current husband would need to assume the mortgage. Hubert said that they were working toward the assumption, but it was contingent on the sale of another home owned by her husband, which was then under contract. In addressing the dispute, the court observed that neither party had provided enough information about the late payments or the assumption process to allow it to fashion an order to expedite the process. It also noted that based on the normal timelines for real estate sales and mortgage refinancing, the assumption should be complete by March 2024. But it declined to issue an order setting a hard deadline.

The refinancing process moved slowly, and Million and Hubert continued to blame each other for the delay. Million claimed that Hubert was "dragging out the process" because she could not qualify for the mortgage on her own, and he maintained that the delay was impacting his ability to secure another mortgage. Hubert countered that Million was interfering with the refinancing process, and she provided the court with copies of emails Million had sent to her lender. In these emails Million represented to the lender that Hubert had "lied in court" and that "[t]he judge [was] completely done with her lies" and had "told [Million] to write" a motion to force the sale of the house.

Million's name was still on the mortgage as of March 2024, and he filed another motion to force the sale of the home. Hubert opposed, arguing that she was still unable to qualify for the mortgage on her own because Million was not making his child support or military benefit payments on time, which affected her income.[5] Hubert noted that the sale of her husband's home was scheduled to close in May, after which he could assume the mortgage.

In May the superior court held another hearing on the mortgage dispute. Hubert told the court that her husband's home had sold and that they were just "waiting for . . . the closing statement." But Million questioned why the removal of his name was contingent on selling a different home "that ha[d] nothing to do with" him. The court made several factual findings, including that both parties bore responsibility for the delay in the removal of Million's name from the mortgage. The court denied Million's request to force the sale of the home, but it set a deadline for Hubert to complete the assumption. Million's name was apparently removed from the mortgage after this deadline.

Million filed his notice of appeal on May 3, 2024.

---

[5] This assertion was supported by an email from Hubert's lender, explaining that the lender was "not able to use [Hubert's] income [for assuming the mortgage] due to the way [Million] ha[d] paid . . . the child support and retirement."

## III. STANDARD OF REVIEW

We review "a trial court's response to a motion to enforce a divorce decree, as well as most decisions on a request for relief from final judgments, under the abuse of discretion standard."[6] We will find an abuse of discretion when the trial court's decision "is manifestly unreasonable," or when a "review of the entire record leaves us with a definite and firm conviction that the trial court erred."[7] "Whether a trial court applied the correct legal rule in exercising this discretion is a question of law" we review de novo.[8]

We review de novo whether a party may obtain relief from a final judgment under Alaska Civil Rule 60(b)(4) "because the validity of a judgment is strictly a question of law."[9] "We apply our independent determination to questions of statutory and contract interpretation, and adopt the rule of law 'most persuasive in light of precedent, reason, and policy.' "[10] But the parties' intent when entering a contract is a question of fact reviewed for clear error.[11]

## IV. DISCUSSION

Million challenges the superior court's order enforcing the term in the dissolution decree that requires him to pay Hubert half of his Coast Guard "retirement"

---

[6] *Gross v. Wilson*, 424 P.3d 390, 394-95 (Alaska 2018) (citing *Johnson v. Johnson*, 394 P.3d 598, 600 (Alaska 2017)).

[7] *Sidney v. Allstate Ins. Co.*, 187 P.3d 443, 448 (Alaska 2008) (first citing *Bromley v. Mitchell*, 902 P.2d 797, 804 (Alaska 1995); and then citing *Alderman v. Iditarod Props.*, 104 P.3d 136, 140 (Alaska 2004)).

[8] *Cartee v. Cartee*, 239 P.3d 707, 712 (Alaska 2010) (citing *Cox v. Cox*, 882 P.2d 909, 913 (Alaska 1994)).

[9] *Gross*, 424 P.3d at 395 (quoting *Blaufuss v. Ball*, 305 P.3d 281, 285 (Alaska 2013)).

[10] *Sidney*, 187 P.3d at 448 (quoting *Progressive Ins. Co. v. Simmons*, 953 P.2d 510, 512 (Alaska 1998)).

[11] *Gross*, 424 P.3d at 395.

benefits. Million correctly points out that *these* benefits are not, in fact, retirement benefits. Million receives VA disability and CRSC payments that federal law prohibits state courts from dividing as marital property.[12] Million also argues that he never consented to the property division agreement.

We interpret Million's arguments as requests for relief from judgment under Civil Rule 60(b) and conclude that the superior court did not err in denying Million relief from the dissolution decree. Even if the decree is erroneous as a matter of federal law, that does not automatically entitle Million to relief from the final judgment. Further, Million's alternative claims of mistake, newly discovered evidence, fraudulent inducement, and coercion are time-barred, and he has not shown a change in circumstances or any other factor warranting relief from the decree.

Finally, Million challenges several discretionary orders from the superior court related to the removal of his name from the mortgage on the former marital home. We hold that the superior court did not abuse its discretion by denying Million's motions in which he sought to force the sale of the home.

### A. The Superior Court Did Not Abuse Its Discretion By Denying Million Relief From The Property Division Agreement Under Rule 60(b).

Aside from a motion for reconsideration, which is due within ten days of a court's order, "an Alaska Civil Rule 60(b) motion provides the only available means for seeking relief from a final judgment of property division."[13] A dissolution decree that incorporates a property division agreement is a final judgment.[14]

Although not styled as such, the motions that Million filed in December 2023 and January 2024 were essentially seeking relief from the dissolution decree under

---

[12] *See Mansell v. Mansell*, 490 U.S. 581, 594-95 (1989).

[13] *Gross*, 424 P.3d at 396 (quoting *Williams v. Williams*, 252 P.3d 998, 1005 (Alaska 2011)).

[14] *See id.* (citing *Williams*, 252 P.3d at 1005).

Rule 60(b). The superior court denied relief in January 2024. Million did not file a timely motion for reconsideration. Instead, he filed motions in March and April seeking relief on the grounds that the property division agreement was obtained through coercion. The superior court denied these motions as untimely under Alaska Civil Rule 77(k) and reaffirmed its January order. The court also rejected Million's claim that he was coerced into consenting to the property division, noting that the record "squarely contradict[ed] his position." Million does not address the timeliness of his motions,[15] but he asserts that the superior court's reaffirmance of its denial of relief under Rule 60(b) was erroneous.

When reviewing the denial of a motion for reconsideration, we "do[] not focus on the merits of the underlying decision, but only on the propriety of the denial of reconsideration."[16] However, when a self-represented litigant's motion for reconsideration is denied both for timeliness and on the merits, we have granted review of the underlying ruling.[17] Here, the superior court was correct to rule that Million's motions were untimely.[18] But because the court reaffirmed its denial of relief under Rule 60(b) on the merits and we "generally apply a more lenient standard for" self-represented litigants,[19] we will consider Million's Rule 60(b) arguments.

---

[15] Million claimed in his motion to supplement his points on appeal that he "ha[d] been appealing the disability pay since [Hubert] remarried in July 2023," but he fails to explain that assertion in his brief. This issue is waived. *Wright v. Anding*, 390 P.3d 1162, 1175 (Alaska 2017) (holding self-represented litigant waived arguments raised in points on appeal but not referenced in briefing).

[16] *Buchholdt v. Nelson*, 534 P.3d 91, 93 (Alaska 2023).

[17] *Williams*, 252 P.3d at 1005.

[18] Million had ten days to seek reconsideration of the January 2024 order, but he did not raise the issue again with the superior court until March. Alaska R. Civ. P. 77(k).

[19] *Pieper v. Musarra*, 956 P.2d 444, 446 (Alaska 1998).

Civil Rule 60(b) provides relief from a final judgment on six grounds, including mistake, newly discovered evidence, fraud, a void judgment, or "any other reason justifying relief." These grounds, however, are "not a substitute for a party failing to file a timely appeal; nor [do they] allow relitigation of issues that have been resolved by the judgment."[20]

Million seeks relief from the dissolution decree on several grounds. First, Million argues that the property division agreement violates federal law, either because it divides VA disability and CRSC pay or because Hubert would not qualify for his benefits under those statutes. Second, Million asserts that some defect — either mistake, fraudulent inducement, or coercion — affected the formation of the agreement. And third, Million argues that Hubert's remarriage constitutes a changed circumstance warranting relief from the agreement.

**1.  Million's claims related to the formation of the property division agreement are time-barred under Rule 60(b)(1), (2), and (3).**

Civil Rule 60(b)(1), (2), and (3) provide for relief from a final judgment on the grounds of mistake, newly discovered evidence, and fraud or other misconduct, respectively. Claims brought under Rule 60(b)(1), (2), and (3) "shall be made . . . not more than one year after the date of notice of the judgment or orders."

Million argues on appeal that the property division agreement was fraudulently altered after he signed it. He points to "new evidence" — what appears to be a portion of an unsigned version of the dissolution petition — that he says supports his claim of fraud. Million extends this argument to suggest that the dissolution decree was "not supported by evidence." These arguments differ from those Million advanced before the superior court. There, Million initially argued that the parties simply mistook

---

[20]  *Burrell v. Burrell*, 696 P.2d 157, 163 (Alaska 1984) (citing 11 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2863, § 2864 (3d ed. 1973)).

his benefits for retirement when they were actually disability and CRSC pay. Later, Million argued that Hubert "coerced" him into signing the agreement using threats of a lawsuit.

Million's new claims related to fraud were raised on the same day he filed his notice of appeal in this court; thus, they are untimely.[21] However, regardless of whether Million claims fraud, mistake, or coercion, his arguments related to the formation of the property division agreement are time-barred under Rule 60(b).[22] More than a year passed between August 15, 2022, when the dissolution decree was issued, and December 11, 2023, when Million sought relief from the decree in superior court.

The superior court did not abuse its discretion by denying Million relief under Civil Rule 60(b)(1), (2), and (3).

### 2. Million is not entitled to relief under Rule 60(b)(4) because the divorce decree is not void.

The United States Supreme Court has held that the USFSPA divests state courts of "the power to treat as property divisible upon divorce military retirement pay that has been waived to receive veterans' disability benefits."[23] In *Mansell v. Mansell*, the Supreme Court invalidated a state court order enforcing a divorce settlement provision that divided a veteran's "total military retirement pay," which included a portion that the veteran had waived so that he could get disability benefits.[24] The Court

---

[21]  *See Williams*, 252 P.3d at 1005 (denying review of issues raised in self-represented litigant's motions that post-dated judgment identified in notice); Alaska R. App. P. 204(b) (requiring parties to specify final order or judgment appealed from).

[22]  Alaska R. Civ. P. 60(b); *cf. Red Hook Constr., LLC v. Bishop*, 556 P.3d 1188, 1193-94 (Alaska 2024) (reversing lower court's tolling of deadline because "the superior court 'do[es] not have the power to enlarge the one-year time limit for motions brought under Civil Rule 60(b)(1)-(3)' " (alteration in original) (quoting *Johnson v. Johnson*, 394 P.3d 598, 602 (Alaska 2017))).

[23]  *Mansell v. Mansell*, 490 U.S. 581, 594-95 (1989).

[24]  *Id.* at 585-95.

rejected the former spouse's argument that the prohibition only precluded the direct payment of disability benefits from the federal government, holding that such an interpretation "would thwart the obvious purposes of the [USFSPA]."[25] We have since observed that military disability benefits "should not, either in form or substance, be treated as marital property subject to division upon the dissolution of marriage."[26] Federal law similarly provides that CRSC pay is "not retired pay,"[27] which other jurisdictions have interpreted as precluding state courts from dividing CRSC pay in a divorce.[28]

Million asserts that because he receives disability and CRSC rather than retirement benefits, the portion of the dissolution decree dividing those benefits "is invalid" under federal law. Million also argues that Hubert "does not qualify" for a portion of his benefits because there was not a ten-year overlap in Million's military service and the marriage, which is a prerequisite to a former spouse receiving payments directly from the federal government.[29] Million does not specify an applicable ground for relief under Rule 60(b) for his federal claims, but we have analyzed similar challenges to dissolution decrees under Rule 60(b)(4).[30]

---

[25] *Id.* at 592.

[26] *Clauson v. Clauson*, 831 P.2d 1257, 1264 (Alaska 1992).

[27] 10 U.S.C. § 1413a(g).

[28] *See, e.g.*, *Randolph v. Sheehy*, 882 S.E.2d 19, 25 (Va. App. 2023) (noting that federal law "preempts a state court from ordering a retired veteran to compensate a former spouse for [CRSC payments]"); *Colafrancesco v. Colafrancesco*, 359 So. 3d 1137, 1143 (Ala. Civ. App. 2022) (holding that "CRSC benefits cannot be . . . subject to division as a marital asset").

[29] 10 U.S.C. § 1408(d)(2).

[30] *See Gross v. Wilson*, 424 P.3d 390, 396-98 (Alaska 2018) (analyzing challenge to property division as violating federal law under Rule 60(b)(4)); *Cline v. Cline*, 90 P.3d 147, 151-54 (Alaska 2004) (holding Rule 60(b)(4) "applies to attempts

Rule 60(b)(4) provides relief from a final judgment that is void.  A final judgment is void only where the issuing court lacked subject matter jurisdiction or violated due process.[31]  "Void judgments may be attacked at any time," but Rule 60(b)(4) "is not a substitute for a party failing to file a timely appeal; nor does it allow relitigation of issues that have been resolved by the judgment."[32]  In other words, "[a] judgment is not void merely because it is erroneous."[33]

In *Gross v. Wilson*, we considered a challenge to a division of military disability benefits that contended that the division was illegal under federal law.[34]  In denying relief under Rule 60(b)(4), we observed that the USFSPA and Supreme Court jurisprudence concerning state courts' ability to divide military disability involved "a rule of substantive federal law, and not a jurisdictional matter."[35]  Thus, "even if the divorce decree was erroneous as a matter of federal law," it would not warrant relief under Rule 60(b)(4) "absent a lack of subject matter jurisdiction or a violation of due process."[36]

Here, we conclude that although the dissolution decree divided assets contrary to federal law, Million is not entitled to relief under Rule 60(b)(4).  The superior court has original jurisdiction in all civil matters, including in actions for

---

to retroactively modify past arrearages where the underlying judgment . . . conflicts with federal law and is, to that extent, void"), *abrogated by Gross*, 424 P.3d at 397 n.34; *Leisnoi, Inc. v. Merdes & Merdes, P.C.*, 307 P.3d 879, 890-92 (Alaska 2013) (analyzing challenge to arbitration award as violating Alaska Native Claims Settlement Act under Rule 60(b)(4)).

[31]     *Gross*, 424 P.3d at 397.

[32]     *Id.* (quoting *Blaufuss v. Ball*, 305 P.3d 281, 285 (Alaska 2013)).

[33]     *Id.* (alteration in original) (quoting *Blaufuss*, 305 P.3d at 286).

[34]     *Id.* at 395-96.

[35]     *Id.* at 397 n.34.

[36]     *Id.* at 397.

divorce.[37] Further, Million had notice, an opportunity to be heard, and was afforded the chance to represent his interests at the dissolution hearing, where his voluntary acceptance of the property division agreement was clear and unequivocal. There is accordingly no evidence that Million's right to due process was violated.[38] Just as in *Gross*, Million has not alleged a jurisdictional or due process deficiency that could render the superior court's judgment void.[39]

Accordingly, we affirm the superior court's finding that Million is not entitled to relief from the dissolution decree under Rule 60(b)(4).

While we do not observe reversible error, military benefit rules are especially important to the large number of service personnel in Alaska. As noted, the USFSPA prohibits the superior court from dividing disability pay and CRSC as marital property in a divorce.[40] However, allocation of these benefits at divorce becomes legally permissible when a service member agrees to divide them as part of a valid contract — such as the settlement agreement here between Million and Hubert.[41]

---

[37]    *See* AS 22.10.020 (providing that superior court has "original jurisdiction in all civil" matters); AS 22.10.025 (listing superior court's powers in divorce proceedings); AS 25.24.210(b) (providing that dissolution petition "shall be filed with the superior court").

[38]    *See State, Dep't of Nat. Res. v. Greenpeace, Inc.*, 96 P.3d 1056, 1064 (Alaska 2004) (noting that core of due process is opportunity for hearing and right to defend one's interests).

[39]    *See* 424 P.3d at 397. Million's claims related to the formation of the property division agreement similarly do not warrant relief under Rule 60(b)(4) because mistake, newly discovered evidence, and fraud do not implicate the superior court's jurisdiction or Million's right to due process. *See Leisnoi, Inc. v. Merdes & Merdes, P.C.*, 307 P.3d 879, 890-92 (Alaska 2013) (discussing requirements of Rule 60(b)(4)).

[40]    *Mansell v. Mansell*, 490 U.S. 581, 594-95 (1989).

[41]    *Gross*, 424 P.3d at 401; *Jones v. Jones*, 505 P.3d 224, 226 (Alaska 2022) ("Federal law does not preclude enforcing one spouse's promise to pay another a sum of money each month even if the source of the money is military disability pay.");

Especially when dealing with self-represented litigants, we encourage the courts to inquire as to whether the settling parties are aware of the contours of this unique federal entitlement.[42]

> ### 3. Million has not shown that a substantial change in circumstances warrants relief under Rule 60(b)(5).

Rule 60(b)(5) provides relief from judgment when "the judgment has been satisfied, released, or discharged, . . . or it is no longer equitable that the judgment should have prospective application." A party seeking relief from a property division under Rule 60(b)(5) must show a "substantial change in circumstances" that warrants modifying the judgment.[43] And although "the rule should be liberally construed to achieve substantial justice, final judgments should not be lightly disturbed."[44] Rule

---

BRETT TURNER, 2 EQUITABLE DISTRIBUTION OF PROPERTY § 6:6, 51-56 (4th ed. Dec. 2024 update) (post-remand history of *Mansell* does not preclude division of disability pay through res judicata and contract law).

[42] There are factual clues that may assist here. A service member typically is not eligible for retirement pay until accruing at least 20 years of qualifying service. 10 U.S.C. § 12731(a)(2). Retirement pay is calculated as a flat percentage of active salary, while medical retirement or separation requires computation of the service member's disability rating, and may be paid in calculated installments or a lump sum, respectively. 10 U.S.C. § 1201 *et seq.*; 10 U.S.C. § 1401. A service member may be receiving indivisible disability pay if they are collecting payments prior to a 20-year period of service or if calculating the payment requires an administrative process or consultation with military officials.

[43] *Dewey v. Dewey*, 886 P.2d 623, 627 (Alaska 1994); *see Burrell v. Burrell*, 696 P.2d 157, 166-67 (Alaska 1984); *Gross*, 424 P.3d at 396. The superior court did not expressly rule on whether Million was entitled to relief under Rule 60(b)(5), but "[w]e may affirm the superior court's decision on any basis appearing in the record." *Pierce v. Pierce*, 949 P.2d 498, 500 (Alaska 1997).

[44] *Dewey*, 886 P.2d at 627 (quoting *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396 (5th Cir. 1981)) (internal quotation marks omitted).

60(b)(5) "was not intended as a mechanism for maintaining divorced parties' equal net worth."[45]

The only changed circumstance that Million cites is Hubert's remarriage in July 2023. But this ground is insufficient to warrant relief under Rule 60(b)(5). We have recognized that remarriage may constitute a substantial change in circumstances warranting termination of alimony, but "this rule does not apply where 'alimony' . . . is an integral part of a property settlement and thus a property right vested in the dependent spouse."[46] Although Million attempts to style his payment obligation under the property division agreement as "spousal maintenance," it is not.[47] Rather, the division of Million's military benefits was an integral part of the parties' property division agreement.

Hubert's testimony at the dissolution hearing established that division of Million's military benefits offset the parties' use of Hubert's savings for living expenses during the period between Hubert's retirement and the start of Million's military benefits. As Hubert explained at the dissolution hearing, after Million retired from the Coast Guard in 2019, "it took a couple of years" for Million's retirement payments to start. Hubert said she was saving money at that time to start a food truck business and that prior to the start of Million's payments, "every penny that [she] saved for [the] food truck . . . [the couple] ended up having to use . . . to keep the family going, and the house paid, and all of [their] bills." So, "when the Coast Guard finally came through, and the VA came through," Hubert said, "that money was promised by him . . . so that I could get my food truck, and I could start my business." In other words, it was the

---

[45] *Burrell*, 696 P.2d at 167.

[46] *Voyles v. Voyles*, 644 P.2d 847, 849-50 (Alaska 1982).

[47] Spousal maintenance, or alimony, "is damages, represented by money, to compensate for the loss of marital support and maintenance." 24 AM. JUR. 2D *Divorce and Separation* § 569 (2025). In contrast, "[t]he purpose of a property division is to distribute the marital assets equitably between the parties." *Id.* § 454.

parties' intent at the time of their dissolution that Million would pay half of his benefits to Hubert to make up for the use of her savings for household expenses.[48]

The portion of the military benefits awarded to Hubert was thus "an integral part of a property settlement and thus a property right vested in" Hubert,[49] and her remarriage does not entitle Million to relief under Rule 60(b)(5).

### 4. Million does not show extraordinary circumstances warranting relief under Rule 60(b)(6).

Rule 60(b)(6) provides relief from a final judgment for "any other reason justifying relief." This rule "is reserved for extraordinary circumstances not covered by the preceding clauses."[50] Accordingly, under the "mutual exclusivity rule," "[g]rounds for relief described in the first five subsections of Rule 60(b) cannot be grounds for relief under the sixth subsection."[51]

For example, in *Powell v. Powell*, we held that several claims for relief from a divorce decree were "not cognizable" under Rule 60(b)(6) because they were covered by Rule 60(b)(1), (2), and (3).[52] Specifically, we noted that the party's argument that she "did not know" the value of her former spouse's retirement account "amount[ed] to a claim of mistake or inadvertence under subsection (1)"; the argument

---

[48]    *See Herring v. Herring*, 373 P.3d 521, 529-30 (Alaska 2016) (finding testimony at settlement hearing probative of parties' intent at time of settlement); *see also id.* at 529 n.16 ("When interpreting contracts, the goal is to 'give effect to the reasonable expectations of the parties.' " (quoting *Bernard v. Alaska Airlines, Inc.*, 367 P.3d 1156, 1159 (Alaska 2016))).

[49]    *Voyles*, 644 P.2d at 849-50.

[50]    *Gross v. Wilson*, 424 P.3d 390, 398 (Alaska 2018) (quoting *Johnson v. Johnson*, 394 P.3d 598, 602 (Alaska 2017)). The superior court did not expressly consider whether Million was entitled to relief under Rule 60(b)(6), but we nonetheless decide this issue. *See Pierce v. Pierce*, 949 P.2d 498, 500 (Alaska 1997).

[51]    *Chena Obstetrics & Gynecology, P.C. v. Bridges*, 502 P.3d 951, 960 (Alaska 2022).

[52]    194 P.3d 364, 370-71 (Alaska 2008).

that her former spouse "misled her" about the value of his retirement account "amount[ed] to a claim of misconduct under subsection (3) or newly discovered evidence under subsection (2)"; and the argument that "she was pressured and threatened into accepting the property division" was "essentially a claim of duress under subsection (3)."[53]

The various iterations of Million's claims related to the formation of the property division agreement closely mirror those we rejected in *Powell*. For example, Million initially argued that he and Hubert "thought" Million was receiving retirement rather than disability or CRSC pay. In other words, Million was arguing that the parties were mutually mistaken about the type of benefits he was receiving.[54] Million's allegations evolved; he later alleged that he "did not willingly" enter the agreement because he "was threatened and coerced into signing the divorce paperwork." In essence, Million was arguing duress.[55] As we noted in *Powell*, relief is available for claims of mistake, misrepresentation, and duress under Rule 60(b)(1), (2), and (3).[56] Because relief is available under other subsections of Rule 60(b), we will not consider them under Rule 60(b)(6).

Million's only remaining claims are that the agreement to divide his benefits violates federal law and that Hubert's remarriage warrants relief from the decree. Neither of these is convincing.

We have recognized four factors in the divorce context that may indicate extraordinary circumstances under Rule 60(b)(6): "(1) the fundamental, underlying

---

[53]   *Id.*

[54]   *See* RESTATEMENT (SECOND) OF CONTS. § 152 (A. L. I. 1981).

[55]   *See id.* § 175 cmt. b.

[56]   194 P.3d at 370-71; Alaska R. Civ. P. 60(b)(1)-(3); *see also Lowe v. Lowe*, 817 P.2d 453, 457 (Alaska 1991) (declining to consider former spouse's claims under Rule 60(b)(6) that she was unaware of entitlement to portion of husband's retirement benefits and benefits' value, and that husband lied about benefits in court).

assumption of the dissolution agreement has been destroyed; (2) the parties' property division was poorly thought out; (3) the property division was reached without the benefit of counsel; and (4) the property in dispute was the parties' principal asset."[57] In applying these factors, "we balance the interest in the finality of judgments against the interest in granting relief from a judgment when justice so requires."[58]

Under the first factor, a review of our precedent shows that a fundamental assumption underlying a property division agreement is destroyed when a term contemplated by the parties is incapable of completion; but such an assumption is not destroyed when the parties are unaware of how federal law treats the assets that they otherwise agreed to divide. For example, in *Guerrero v. Guerrero*, we found the underlying assumption of an agreement to divide military benefits was destroyed when a former spouse was *denied* a portion of military disability because of federal restrictions.[59] We noted that both parties assumed the wife would receive some of the benefits; the husband, although he "disputed the total amount of his benefits" his wife should receive, "consistently recognized [she] should receive *some portion* of his military benefits."[60] When the parties learned the husband received disability, "this destroyed the parties' expectation that [the wife] would receive some portion of [the husband's] military benefits."[61]

---

[57]     *Guerrero v. Guerrero*, 362 P.3d 432, 444 (Alaska 2015) (quoting *Cook v. Cook*, 249 P.3d 1070, 1084 (Alaska 2011)). These factors "are not strictly necessary conditions"; they are "particular instantiations of the equitable factors" that justify relief from a final judgment. *Clauson v. Clauson*, 831 P.2d 1257, 1261 (Alaska 1992).

[58]     *Clauson*, 831 P.3d at 1261 (quoting *Norman v. Nichiro Gyogyo Kaisha, Ltd.*, 761 P.2d 713, 717 (Alaska 1988)).

[59]     362 P.3d at 444-45.

[60]     *Id.* at 445 (emphasis added).

[61]     *Id.*; *cf. Lowe*, 817 P.2d at 458-59 (finding fundamental assumption that wife would forgo portion of husband's retirement in return for husband taking primary

Conversely, we have rejected a Rule 60(b)(6) motion made by a former spouse who forwent a portion of her husband's military retirement because she "did not know that she was entitled to a portion of the retirement benefits and that she did not know what they were worth."[62] Her assertions "amount[ed] to a claim of mistake or inadvertence under [Rule 60(b)(1)], and [were] barred by the one year time limit."[63]

Despite Million's claims to the contrary, both he and Hubert clearly and consistently expressed their shared assumption that Hubert would receive a portion of Million's military benefits. As Hubert explained at the dissolution hearing: "[Million] agreed to pay half of his retirement . . . once a month, first of the month when he gets it; half goes [through] Venmo to me." Million confirmed that he was receiving $637 in monthly benefits.

There is no question that Million consented to divide his benefits.[64] When the superior court master asked the parties why they chose to handle the benefit payments directly rather than through a QDRO, Hubert said the parties thought it would be more convenient — and equally enforceable — to incorporate the term into the

---

custody of children destroyed when husband did not do so); *Williams v. Crawford*, 982 P.2d 250, 255-56 (Alaska 1999) (finding fundamental assumption destroyed when wife was subsequently found ineligible for survivorship benefits of civil service pension); *Juelfs v. Gough*, 41 P.3d 593, 597 (Alaska 2002) (fundamental assumption that parties would cooperate as required for shared custody of dog was destroyed when cooperation "proved not to exist, requiring judicial intervention").

[62] *Lowe*, 817 P.2d at 457.

[63] *Id.*

[64] We also doubt Million's claim before the superior court that he was unaware that he was receiving disability pay rather than retired pay. Just one month after the dissolution hearing, Million's own records reveal that he was labeling his payments to Hubert as "disability pay," a trend which continued through October 2023. It is difficult to reconcile Million's own descriptions of his payments to Hubert as "disability" with his subsequent assertion that he was, in fact, unaware that those payments were disability.

superior court's dissolution order. Million agreed, stating: "Yeah, I'm going to pay it. Yeah." Later, when asked to confirm what financial obligations remained to be completed, Million responded: "The retirement." Further, Million testified that he had agreed to the property settlement freely and voluntarily, and he believed the division of assets was fair.

The property division agreement ensures that Hubert will receive a portion of those benefits, which is what Million and Hubert intended. Neither Hubert's subsequent remarriage nor the fact that the decree may be erroneous as a matter of federal law destroys that assumption.

Similarly, the fact that Hubert will continue to receive a portion of Million's benefits weighs against finding the property division was "poorly thought out."[65] In *Guerrero*, we found the property division was poorly thought out because the parties, "[d]espite knowing that [the husband] was seriously injured," failed to consider the possibility that he would receive military disability and instead "operat[ed] under the assumption that [the wife] would be able to receive [the husband's] military benefits."[66] Here, even if the parties were mistaken as to what types of benefits Million received or if they were simply unaware that disability is treated differently than retirement under federal law, neither mistake foiled their intended goal — Hubert would receive half of Million's military benefits in exchange for her expenditures during the marriage.

Further, Million does not suggest he entered the agreement without the benefit of counsel. In fact, Hubert represented that both parties "met together and separately with [attorney] Andrew Ott for advice putting our Dissolution Petition

---

[65] *See Powell v. Powell*, 194 P.3d 364, 372 (Alaska 2008). Million does not argue that the property division agreement was poorly thought out, but we nonetheless address this factor.

[66] 362 P.3d at 445.

together." Even assuming that Hubert did "threaten[] and coerce[]" Million into signing the agreement, Million told the superior court that Hubert threatened him with litigation *before* he executed the dissolution petition. Million "thus accepted the risks of not having a lawyer in exchange for the benefit of not paying attorney's fees."[67] Finally, Million offers no argument on whether the disability and CRSC pay was the parties' principal asset. But even if we assume that it was, "this factor alone [is] insufficient to justify relief based on Rule 60(b)(6)."[68]

In sum, Million is not entitled to relief from the divorce decree under Rule 60(b)(6) or any other provision of the rule.

## B. The Superior Court Did Not Abuse Its Discretion By Declining To Force The Sale Of The Former Marital Home.

Million argues that the property division was "not allocated equally for both parties" because he "was forced to wait for almost two years for [his] name to be removed" from the mortgage on the former marital home. We interpret this argument as challenging the superior court's denial of Million's multiple motions to force the sale of the home in order to expedite the removal of his name from the mortgage. We conclude that the superior court did not abuse its discretion by denying Million's motions.[69]

Million devotes large portions of his briefing to events that occurred in June and July 2024. The notice for this appeal was filed on May 3, 2024, and documents filed in the trial court after that date are not part of the record on appeal.[70] Million did

---

[67]  *Powell*, 194 P.3d at 372 (finding absence of counsel did not favor relief from property division under Rule 60(b)(6) because party engaged in negotiating agreement after receiving threats of litigation from former spouse).

[68]  *Id.*

[69]  We review a superior court's order permitting the sale of property for abuse of discretion. *Guerrero*, 362 P.3d at 438.

[70]  *See* Alaska R. App. P. 210(a).

not file a request to supplement the record. Accordingly, the post-notice hearings, motions, and events that Million references are not properly before us, and we do not consider them.

Million claims that the superior court ordered Hubert to remove his name from the mortgage by March 17, 2024, but failed to enforce the order when Hubert did not meet the deadline. This is incorrect. At a December 2023 hearing, the superior court noted that it could enter an order requiring Hubert to execute all necessary documents by March 18 if both parties agreed to it. But Hubert did not agree, and the court declined to issue the order.

More importantly, though, the superior court noted that the parties' dissolution agreement did not include any deadlines for either party's obligations related to the mortgage. The court also explained that both Million and Hubert, while accusing each other of obstruction and delay, had failed to provide the court with adequate information to afford either party a remedy. Further, the superior court found that both parties were to blame for the delay. Hubert presented the superior court with evidence that Million had interfered with the refinancing process by contacting her lender and accusing her of lying in court. Hubert also presented an email from her lender stating that she could not qualify for an assumption of the mortgage because of Million's failure to make timely child support payments.

Given the lack of enforceable terms in the dissolution petition and Million's own conduct contributing to delay, we cannot say that the superior court abused its discretion by declining to force the sale of the home.

## V. CONCLUSION

The superior court's order is AFFIRMED.